■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEOFILIO FERNANDEZ, Appellant.—Judgment, Supreme Court, New York County (Dennis Edwards, J.), rendered November 6, 1985, convicting defendant after jury trial of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree, and sentencing him as a second violent felony offender to consecutive terms of 7½ to 15 years imprisonment on the second degree offense and two terms of 3½ to 7 years on the third degree offenses, is modified, on the law, solely to the extent of reversing the imposition of consecutive sentences of 3½ to 7 years for the two counts of criminal possession in the third degree and substituting therefor the imposition of sentences to run concurrently to each other, and otherwise affirmed.

Defendant was charged with fatally shooting two people in a bar, and menacing two taxi service employees with a gun earlier that same night. A jury found defendant guilty of the second degree weapon possession charge in connection with the shootings, and the third degree possession charges with respect to the menacing of the taxi employees, but was unable to reach a verdict on the homicide charges.

The People concede that the sentences on the two third degree possessory counts should have been concurrent (see, Matter of Johnson v Morgenthau, 69 NY2d 148), albeit consecutive to the sentence on the second degree conviction (see, People v Okafore, 72 NY2d 81). As to the third degree weapon charges, there was sufficient evidence for the jury to conclude that the gun was loaded and operable (People v Totten, 161 AD2d 678).

Even ignoring defendant's ultimate conviction on the murder counts (see, People v Fernandez, 166 AD2d 313, lv denied 76 NY2d 1021) defendant never asserted any inconsistency between the first jury's guilty verdict on the second degree weapon charge (intent to use the gun unlawfully against another) and its failure to reach a verdict on the homicide counts. Further, while the first jury was unable to decide whether defendant shot at the two homicide victims with intent to kill or with intent to cause serious physical injury, viewing the evidence in a light most favorable to the People (Jackson v Virginia, 443 US 307), shows ample grounds for the jury's finding that defendant intended to use the weapon against them.

Defendant further contends that the trial court violated CPL 310.10 by allegedly granting permission for at least one juror to attend church services, during a lunch recess, unsupervised. Such a release from supervision during the deliberations would indeed be violative of CPL 310.10 (see, People v Coons, 75 NY2d 796). However, the record does not show such lack of supervision.

CPL 310.10 provides that "the jury must retire to deliberate upon its verdict * * * and must be continuously kept together under the supervision of a court officer". The words "continuously kept together" must, under the exigencies of everyday life, be accorded a liberal interpretation, and, in fact, have been. Jurors ride in different buses, share different hotel rooms, and certainly use the restroom separately, not en masse. As Justice (then Judge) Cardozo said in 1915 in a case where the jury was separated into two groups for dinner: "What was done was in accordance with an order of the court. The defendants urge that the order was improper. There are times and emergencies when the statute contemplates that leave of the court will justify a separation of jurors * * * During prolonged deliberations, some degree of separation is often inevitable. The trial court must determine to what extent it shall be allowed * * * We hold, therefore, that the division of the jurors did not infringe the defendants' rights. But even if the separation were to be thought an irregularity, no prejudice resulted." (People v Dunbar Contr. Co., 215 NY 416, 426 [citations omitted].)

The record shows that the defense counsel in this case advised the trial court: "Your Honor, it has come to my attention that there were I believe three jurors that had gone to church during the lunch hour. I believe that the set of facts arose from one of the jurors requesting of the court officer permission to go to church, and that that request was relaid [sic] to the court and that the court then granted permission and that the three jurors then went to church during the luncheon recess. My objection to that procedure, your Honor, is that number one that the jurors were deliberating when the court permitted three of them to leave the deliberations and go to church and do what they had to do."

The court admonished counsel to "state the facts correctly", and when counsel responded that she was only stating the facts as she knew them, the court replied: "The facts are when lunch arrived and the jurors ceased their deliberations the request to permit one or more jurors to attend Saint Anthony's Mass was honored by the court."

Defense counsel made a number of objections, i.e., that the request had to be made in writing and that counsel should have been consulted, and moved for a discharge of the jury and a declaration of mistrial, which was denied. Counsel, however, never argued that the jurors were unsupervised during the luncheon recess church service, nor did counsel seek a hearing as to this issue.

Further, while a reconstruction hearing was granted in this case, appellate counsel did not seek reconstruction on this question. When Justice Edwards, the Trial Judge, was called to testify at this hearing, he was not asked any questions by the defense as to whether any member of the jury was unsupervised during this period.

There is nothing in the record, at all, to suggest that a court officer did not accompany the juror or jurors to the church service. Defendant has never contended otherwise, except upon this appeal, although, as noted, he had more than one opportunity to do so.

The dissent posits that the majority relies on the "[i]mplicit * * * inference" that there must have been supervision under the presumption of regularity. This is an incorrect extension of the theory upon which the memorandum for the list is actually predicated. Instead of relying on a presumption of regularity, it is founded on a more substantial footing. There was absolutely *no evidence* at all submitted by the defendant, on the record, at the trial or in any collateral proceeding, based upon the newly claimed lack of supervision of certain jury members.

Concededly, in certain instances, defendant may raise a claimed deprivation of a basic constitutional right on appeal, even though the issue had not been preserved by being specifically raised at nisi prius. Nevertheless, such preservation, as a matter of black letter law, does not "dispense with the need for a factual record sufficient to permit appellate review" *(People v Kinchen,* 60 NY2d 772, 774).

While we did not initially rely upon such a presumption of regularity to support the position herein, the presumption can certainly be properly asserted in the circumstances presented to us. We agree with the dissent that the "presumption properly applies in reviewing standard procedures". Certainly, supervision of the jury is just such a standard procedure.

Further, the dissent states that "a presumption of regularity attending judgments of conviction operates only until the appearance of substantial evidence to the contrary", citing

*People v Richetti* (302 NY 290). It seems noteworthy that in *Richetti (supra,* at 298) the Court of Appeals specifically explained "We do not think that presumption of regularity can serve to settle without trial, what otherwise would be a plain dispute of fact. A presumption of regularity exists only until contrary substantial evidence appears [citations omitted]. It forces the opposing party (defendant here) *to go forward with proof* but, once he does go forward, the presumption is out of the case. It could not conceivably be used to prevent defendant from proving his allegations." (Emphasis added.)

Obviously, in the case before us, as we have reiterated, the defendant was not prevented, at any stage of the proceedings from proving (or even asserting) his newly minted allegations. However, he *never came forward with any proof* or even a bald allegation of non-supervision of the jurors by the court, essential to raise a "dispute of fact".

The dissent notes that the request to attend services was not made known to the defense counsel, and states this "irregularity and the sequence of events * * * stretches the presumption of regularity beyond its permissible bounds". However, once again, the record shows that the court gave permission for the juror or jurors to attend services *during the luncheon recess,* when presumably defense counsel was unavailable to be notified. This is analogous to the situation in which this court has held that failure to notify counsel prior to taking action, when a juror becomes ill after deliberations commence, does not mandate reversal, absent any prejudice to the defendant *(see, People v Prisco,* 37 AD2d 369, 371, *affd* 30 NY2d 808, *cert denied* 409 US 1039). It is also significant that since this event took place during lunch, the jury was not deliberating.

On the record before us, defendant's contention that the jurors were unsupervised during the Mass remains pure speculation and surmise. Concur—Asch, Smith and Rubin, JJ.

Carro, J. P., and Wallach, J., dissent in a memorandum by Wallach, J., as follows: I find an insurmountable obstacle in the trial court's granting of permission, without notice to defendant, for at least one juror (and possibly as many as three) to attend church services, unsupervised, during a lunch recess from deliberations. The minutes of the proceedings, at which point defense counsel questioned the court about this irregular procedure, are silent as to whether such church attendance was with or without court-appointed supervision, although it would seem logical that if there had been such

supervision, the Trial Judge would certainly have emphasized that point in denying the motion for mistrial.

The reconstruction hearing referred to in the majority opinion, which was held six years after the trial, was for the specific purpose of "reconstruct[ing] a portion of the trial that was missing from the court reporter's notes". (The Trial Judge was unable to shed any light on those missing portions at the hearing.) It had nothing whatsoever to do with the issue that now divides us, so defendant certainly had no reason—let alone a burden—to raise at that hearing the question of supervision during the excused absence of the juror(s). Any reference to that reconstruction hearing is thus irrelevant to the issue at hand.

Implicit in the majority's ruling is the inference that there must have been supervision, under the rubric of the presumption of regularity in criminal proceedings. But that presumption properly applies in reviewing standard procedures, such as the issuance of a warrant *(People v Szczepanik,* 55 AD2d 702, 703 [Mahoney, J., dissenting]), the legality and sufficiency of evidence to support a grand jury indictment *(People v Potwora,* 44 AD2d 207, 210), or the speed of a petit jury in returning a verdict *(see, Carolan v Altruda,* 17 AD2d 211, 213, *affd* 15 NY2d 1010). Where recognized statutory safeguards are not complied with, the presumption of regularity with regard to jury procedure can be overcome *(People v Light,* 285 App Div 496). In any event, a presumption of regularity attending judgments of conviction operates only until the appearance of substantial evidence to the contrary *(People v Richetti,* 302 NY 290). Once that occurs, the presumption dissolves and the burden shifts to the People to prove compliance with statutory and constitutional requirements *(People v Smith,* 286 App Div 466, 468).

Evidence in the minutes of noncompliance with procedural safeguards is enough to overcome the presumption of regularity *(People ex rel. Sheehan v Murphy,* 6 NY2d 238). The minutes here reveal one immediate irregularity, timely objection to which was summarily rejected, that the request from the juror (to say nothing of the court's decision to grant the request) was not made known to defense counsel *(see, People v Migliori,* 269 App Div 996). The undisputed evidence of that irregularity was enough to dissolve the general presumption of regularity, thus relieving defendant of the burden of having to prove noncompliance on the more important issue of unsupervised absence.

In light of this irregularity and the sequence of events, the

inference that the lunchtime visit of the juror(s) to church was made "under supervision" stretches the presumption of regularity beyond its permissible bounds. Even if defendant had not made a timely motion for mistrial, such a release from supervision during deliberations would have to be considered violative of CPL 310.10, warranting a new trial *(People v Coons,* 75 NY2d 796).