OPINION OF THE COURT
Acting Chief Judge Simons.
In People v Antommarchi (80 NY2d 247, rearg denied 81 NY2d 759 [decided today]), the trial court questioned 37 of 67 prospective jurors at a sidebar, in defendant’s absence, about their subjective thoughts on a number of issues. We reversed the conviction stating that while a "court may conduct sidebar discussions with prospective jurors in a defendant’s absence if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments * * * [it] may not * * * explore prospective jurors’ backgrounds and their ability to weigh the evidence objectively unless defendant is present” (80 NY2d, at 250, supra).
The appeals now before the Court require us to decide whether that rule should be applied retroactively or prospectively only. The issue is squarely presented because in all three cases the trial court conducted some portion of the examination of prospective jurors during side-bar conferences held in defendant’s absence and explored such matters as whether the prospective juror, or the juror’s friends or relatives, had been a crime victim or involved in a criminal proceeding. We conclude People v Antommarchi should be applied prospectively only and, deciding these appeals under the pr^-Antommarchi rule, we find no violation of defendants’ constitutional or statutory right to be present. We therefore affirm the orders of the Appellate Division in People v Mitchell and People v Casiano. The order in People v Chambers should be reversed, however, because the People impermissibly used race as a basis for excluding prospective jurors (see, Batson v Kentucky, 476 US 79).
*525 I
Prior to Antommarchi, trial courts routinely questioned potential jurors regarding matters going to general bias or hostility in the defendant’s absence and did so without criticism from the appellate courts (see, e.g., People v Parker, 132 AD2d 629, appeal dismissed 71 NY2d 887 [approving of court’s inquiry, in defendant’s absence, as to whether defendant’s condition as an AIDS patient would affect potential jurors]; People v Ganett, 68 AD2d 81, affd 51 NY2d 991 [finding no prejudice where all jurors with responses to court’s questions were told to approach the bench for further discussion in defendant’s absence]; see also, People v Howard, 167 AD2d 922, lv denied 77 NY2d 961 [requiring preservation of right to be present]; People v Blake, 158 AD2d 979, lv denied 75 NY2d 964 [same]).
In Antommarchi, however, we held that the court may not actively solicit answers from a prospective juror which relate to that juror’s bias or hostility in the absence of defendant. Moreover, applying our recent decision in People v Dokes (79 NY2d 656, 662), we permitted defendant to successfully raise the question on appeal notwithstanding his failure to object to exclusion from the side-bar conferences during jury selection. The defendant could have waived his presence, of course (see, People v Webb, 78 NY2d 335, 339-340), but no waiver had been requested because under the existing practice there was no reason to do so.
The holding represented a dramatic shift away from customary and established procedure and it is reasonable to believe, as the People claim and defendants do not deny, that the change in the jury selection process will be substantial and affect most, if not all, appeals presently pending from jury trials. It is appropriate, therefore, to consider whether we may and should apply the rule only prospectively.
II
There presently exist two competing theories of law on retroactivity. One is presented in Griffith v Kentucky (479 US 314), where the Supreme Court held that a new constitutional rule is to be applied retroactively to all cases pending on direct review. The competing theory was applied most recently by this Court in People v Pepper (53 NY2d 213, cert denied 454 US 967) where we held that the Court is to determine the retroactive effect of a new rule by evaluating *526 three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application (see, People v Pepper, supra, at 220).
It is defendants’ position that the Griffith rule is binding on this Court. If no Federal constitutional principles are involved, however, the question of retroactivity is one of State law. The Supreme Court has no concern with the uniformity of our law and if only a local question is presented, the "state courts generally have the authority to determine the retroactivity of their own decisions” (see, American Trucking Assns. v Smith, 496 US 167, 177). If the Antommarchi decision rests solely on State law, we may follow our own well-established rules regarding the prospective application of new rules, as set forth in People v Pepper (supra).
A
It is manifest that Antommarchi was decided as a question of State law. The basis for the decision is found in New York’s Criminal Procedure Law, which provides that a defendant "must be personally present during the trial of an indictment” (CPL 260.20). Under our decisions, this statutory right has been extended to the impaneling of the jury (see, People v Antommarchi, 80 NY2d 247, supra; People v Sloan, 79 NY2d 386, 391; People v Velasco, 77 NY2d 469, 472; see also, People v Mullen, 44 NY2d 1, 4). Although the statute has underlying due process concerns, its protective scope is broader than the constitutional rights it encompasses (see, People v Morales, 80 NY2d 450, 456 [decided today]; People v Mullen, supra, at 4-5).
The Federal constitutional right to be present is rooted in the Confrontation Clause of the Sixth Amendment or, where the defendant is not actually confronting witnesses or evidence, in the Due Process Clause of the Fifth or Fourteenth Amendment (see, United States v Gagnon, 470 US 522, 526). The right is not absolute and must be evaluated in light of the specific factual circumstances surrounding a particular defendant’s case. As the Supreme Court has held, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only” (Snyder v Massachusetts, 291 US 97, 107-108). In proceedings where guilt or innocence is not being determined and the facts in the pending prosecution are not pertinent, the exclusion of a defendant from a particular *527 proceeding normally will have no "relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge” (see, Snyder v Massachusetts, supra, at 105-106; United States v Gagnon, 470 US, at 527, supra; People v Morales, 80 NY2d 450, supra).
The analysis in People v Antommarchi proceeded in a general rather than fact-specific manner. It involved none of the balancing process employed in constitutional determinations, but rather was based on a violation of CPL 260.20. We did not evaluate the facts in light of the entire record nor did we make a determination that defendant’s ability to defend against the charges had been substantially impaired (see, United States v Gagnon, supra, at 526-527). The Court determined only that a statutory violation had occurred (cf., People v Sloan, 79 NY2d 386, supra [where questioning dealt with witnesses and events involved in the very case to be tried, and defendant’s presence could have had a substantial effect on his ability to defend]). Although presence at side-bar conferences would enable defendant to glean information from jurors’ responses and demeanor essential to the exercise of peremptory challenges, exclusion from those proceedings, which are not constitutionally required, would not substantially affect the ability to defend against the charge. Thus, the defendant’s presence is not essential to a fair trial (see, United States v Washington, 705 F2d 489, 498, n 5). Therefore, in the usual scenario, limited exclusion from side-bar discussions with prospective jurors concerning general bias or hostility will not violate a defendant’s constitutional right to be present, though, as in Antommarchi, it does violate a defendant’s statutory right to be present.
Finally, we held in Antommarchi that the violation of defendant’s right to be present required reversal despite his failure to object — a result not required under Federal law (see, United States v Gagnon, 470 US 522, 528-529, supra).
We conclude therefore that the Antommarchi rule is not compelled by Federal law and thus we are free to apply State rules on retroactivity.
B
New York’s rule on retroactivity was set forth in People v Pepper (53 NY2d 213, supra; see also, People v Morales, 37 NY2d 262, 268-269, and retroactivity cases cited therein). Pepper stated the Supreme Court rule as it existed prior to *528 Griffith v Kentucky (supra) (see, Stovall v Denno, 388 US 293, 297; Linkletter v Walker, 381 US 618, 636). It holds that when the Court is confronted with the question of whether to grant retroactive effect to a new rule or to apply the rule prospectively, it is to evaluate three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application (see, People v Pepper, supra, at 220; see also, People v Morales, 37 NY2d 262, 269, supra).
The Griffith analysis is supported by compelling arguments. We conclude, however, that we should apply Pepper, essentially relying on the reasoning found in recent decisions which adhere to firmly established State rules (see generally, People v P. J. Video, 68 NY2d 296, 303, cert denied 479 US 1091; People v Johnson, 66 NY2d 398, 406-407; see also, Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 73 [Simons, J., concurring]). Moreover, doing so permits this Court to expand the protection accorded defendants when we might otherwise hesitate to do so because retroactive application threatens to " ’wreak more havoc in society than society’s interest in stability will tolerate’ ” (see, Gager v White, 53 NY2d 475, 483, cert denied sub nom. Guertin Co. v Cachat, 454 US 1086 [quoting from Fairchild, Limitation of New Judge-Made Law to Prospective Effect Only: ’Prospective Overruling” or "Sunbursting”, 51 Marq L Rev 254]; Fallon and Meltzer, New Law, Non-Retroactivity, and Constitutional Remedies, 104 Harv L Rev 1731,1807).
C
Considering the three factors set forth in Pepper, we conclude that the Antommarchi rule should be applied only prospectively.
First, the purpose of the rule is not to cure any constitutional infirmity inherent in the former practices, but rather to permit a defendant a more active role in the examination and selection of potential jurors. Moreover, it relates to the fact-finding process only indirectly and therefore retroactivity is not mandated (see, People v Pepper, supra, at 221; People v Morales, 37 NY2d 262, 269, supra). Second, the courts have substantially relied on the prior practice. In the absence of a formal protest, they have customarily examined prospective jurors in defendants’ absence to expedite jury selection, to avoid juror embarrassment and to encourage juror candor.
*529 Finally, the voir dire process is involved in every jury trial and most if not all of the judgments of conviction in the cases currently on appeal will present an Antommarchi question. The reversal, or even the reconsideration, of these appeals on Antommarchi grounds would create a substantial burden on the administration of justice and delay the disposition of countless pending cases. In many of these matters no record was made because the parties did not perceive the necessity for one. Thus, hearings would presumably be required to reconstruct a record of conversations and questions which, at the time, none of the participants objected to or deemed of particular significance. Conceivably, new trials could be required in all of the substantial number of cases in which no record of the voir dire was made. Accordingly, we find substantial reasons to hold that the Antommarchi rule applies only to those cases in which jury selection occurred after October 27, 1992, the date People v Antommarchi was decided.
D
Before Antommarchi, the accepted practice in the absence of an objection was to exclude defendants from bench conferences with prospective jurors, especially when questions were directed to the prior victimization of a juror or of a juror’s friends or family. The only limitation which had been imposed on this practice was that the questioning could not concern the very same witnesses and events which were to be involved in the case to be tried (see, People v Sloan, 79 NY2d 386, supra).
The side-bar questioning in the cases before us involved such matters as whether the prospective jurors had been crime victims, had been involved in criminal matters, or had doubts about their ability to remain impartial given the general nature of the case. Prior to Antommarchi, no rule provided that such questions, if asked and answered outside of defendants’ presence without objection, deprived defendants of their right to be present "during the trial of an indictment” (CPL 260.20) or called for automatic reversal. Consequently, we find no violation of defendants’ statutory rights as those rights were understood prior to October 27, 1992. Moreover, inasmuch as the questioning involved matters of general bias or hostility, we find no violation of defendants’ constitutional right to be present and the convictions of defendant Mitchell and defendant Casiano should be affirmed.
*530 III
The order of the Appellate Division in People v Chambers should be reversed. During the jury selection process, defendant argued that the prosecution was impermissibly excluding members of the venire on the basis of race, in violation of Batson v Kentucky (476 US 79, supra). In defense of his exclusion of African-American and Latino jurors, the prosecutor stated to defense counsel that it was "Because I know you’ll knock the whites off.” Later, in response to another Batson challenge by defense counsel, the prosecutor explained that: "I have stated on the record, and I made it quite clear that defense counsel was * * * using his peremptory challenges to knock off people who were white and middle class.” Not only do these statements not provide a racially "neutral explanation” for the prosecutor’s challenges of prospective jurors (see, Batson v Kentucky, supra, at 98), they betray a clear racial motive for the prosecutor’s exercise of peremptory challenges. Because the exclusion of even a single juror on racial grounds is constitutionally forbidden (see, People v Bolling, 79 NY2d 317, 321), defendant has sustained his Batson claim and a new trial is ordered.
Accordingly, the orders of the Appellate Division in People v Casiano and People v Mitchell should be affirmed. The order of the Appellate Division in People v Chambers should be reversed and a new trial ordered.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
In People v Mitchell and People v Casiano: Order affirmed.
In People v Chambers: Order reversed and a new trial ordered.