OPINION OF THE COURT
Alfred Clifford Tisch, J.
At the conclusion of a trial that lasted almost three calendar weeks, a jury convicted the defendant of nine counts of sodomy in the first degree, seven counts of sexual abuse in the first degree, two counts of sexual abuse in the second degree, eight counts of sexual abuse in the third degree and one count of endangering the welfare of a child. The jury found that the defendant was guilty of 27 of the 63 counts of child molestation charged in the indictment involving six boys who were between the ages of 9 and 17 when the alleged incidents occurred. The defendant has appealed his conviction and the matter is pending in the Appellate Division.
Since the defendant was a pediatrician, the case was notorious and highly publicized prior to the commencement of the trial. In an effort to weed out potential jurors who could not be fair and impartial as a result of being exposed to media generated or other information about the case or the defendant, the court prescreened the jurors in chambers in the presence of the defendant’s attorney and the prosecutor; the defendant was not present during this process. The defendant was also not present in chambers when, at the conclusion of each round of jury selection, the prosecutor and his counsel advised the court of the jurors they desired to excuse for cause and peremptorily. Thereafter, those jurors that the court determined were unfit to serve for cause and those excused peremptorily were formally excused in open court in the presence of the defendant. Prior to entering chambers to discuss challenges, the defendant’s attorneys were given an opportunity to consult the defendant.
Claiming that he was prejudiced by the court’s failure to afford him his right to be present, the defendant now moves, pursuant to CPL 440.10 (1) (h) for an order vacating the judgment entered against him. He contends that his Federal *264 constitutional rights were violated by the prescreening procedure and the procedure engaged in by the court to record the challenges to the jurors. The People oppose the motion. In making a determination of the motion, the court has received and considered: the affidavit of the defendant; the affidavit of Robert Sale, Esq.; the memorandum of law and reply memorandum of law by Richard A. Greenberg, Esq., in support of the motion; the affidavit and memorandum of law of John Ribeiro, Esq., in opposition to the motion; and a transcript of the prescreening and jury selection proceedings submitted by both sides for the court’s consideration.
The defendant contends that recent decisions of the Court of Appeals require this court to now vacate the judgments entered against him because the court committed reversible error when it engaged in a process of prescreening jurors in chambers out of the defendant’s presence. Even though the critical Court of Appeals decision, People v Sloan (79 NY2d 386), postdated the trial of this matter by more than six months, his position is that the Sloan rule is retroactive to cases pending on appeal because the decision was premised upon an interpretation of the rights afforded a criminal defendant by the 14th Amendment Due Process Clause of the United States Constitution. This is the first time a court in this State has been asked to consider whether the holding in Sloan should be applied retroactively to cases pending on appeal. The court disagrees with the defendant’s contentions and holds that the Court of Appeals pronounced what the law of the State of New York requires regarding the defendant’s presence at trial in reaching its decision in Sloan. The court further holds, pursuant to People v Mitchell (80 NY2d 519), that New York retroactivity principles apply and that the Sloan rule should be applied only prospectively.
The court also disagrees with the defendant’s contention that the defendant’s constitutional right to be present was violated by the procedure the court engaged in to effectuate challenges to prospective jurors.
Preliminarily, the court has also determined that this motion must be denied because sufficient facts appear on the record of the proceedings to permit adequate review of the grounds raised on appeal (see, CPL 440.10 [2] [b]). However, recognizing that this threshold determination will likely be appealed, the court has considered the merits of the motion now to expedite the process of appellate review of the merits *265 in the event that the Appellate Division disagrees with this determination.
The analyses of the court underlying the determinations made herein follow:
THE THRESHOLD QUESTION
The only critical facts that the defendant has submitted which he contends augment the record with respect to the issues raised upon this motion are that the defendant was not present when the prescreening of jurors with respect to pretrial publicity occurred or when the attorneys advised the court, in chambers, of their respective challenges for cause and peremptory challenges and that he never waived his right to be present. Significantly, the People have nowhere disputed these statements and implicitly concede that the defendant was not present during the prescreening process. Moreover, the record discloses that the defendant was not present during the prescreening process ("The situation is, one at a time you will be brought back to speak to the Court and counsel in chambers.” [Trial Transcript, Jan. 25, 1991, at 9]), or during the in-chambers proceedings concerning juror challenges ("As soon as counsel had an opportunity to consider their thoughts, I’ll meet them in chambers.” [Trial Transcript, Jan. 27, 1991, at 283]). Just as significant is the fact that the record "does not reflect defendant’s presence in chambers at any time during the 'pre-screening’ proceedings” (defendant’s mem of law, at 5) or "during the challenges” (defendant’s mem of law, at 12). Under these circumstances, sufficient facts appear on the record regarding the issue raised upon the motion to permit adequate review thereof upon appeal. The defendant’s motion must be denied for this reason alone (see, CPL 440.10 [2] [b]).
CHALLENGING THE JURORS
The procedure engaged in by the court to effectuate the attorneys’ challenges for cause and peremptory challenges after each round of the formal jury selection is substantially the same as the procedure the Court of Appeals approved of in People v Velasco (77 NY2d 469, 473 [The defendant was absent from "the robing room discussion in which the attorneys advanced the legal basis for their challenges for cause and identified their peremptory challenges, later formally effected in open court.”]) and People v Dokes (173 AD2d 724, revd on *266 other grounds 79 NY2d 656 [The defendant was absent from "the recording of the peremptory and for-cause challenges” in chambers]). "The in-chambers discussion was a mere preliminary advisement of the Court of challenges later effectuated in open court in the presence of defendant and thus did not constitute a material part of the trial” (People v Velasco, supra, at 473). The defendant’s motion to vacate the judgment entered against him on this ground is, therefore, denied.
DEFENDANT’S EIGHT TO BE PRESENT DURING COURT PROCEEDINGS
The defendant’s right to be present during court proceedings arises from two complimentary yet distinct sources of law. The Constitution of the United States affords the defendant this right in certain circumstances. At the same time, State law (including the State Constitution) mandates the presence of the defendant during certain court proceedings (see, People v Dokes, 79 NY2d 656, 659, supra)[1] Many of the decisions relating to the defendant’s right to be present, including People v Antommarchi (80 NY2d 247), refer to these distinct sources of law, but reach a conclusion that the defendant has a right to be present at some stage of a court proceeding without explicitly stating that the conclusion is premised upon a specific source of law. Consequently, the Court of Appeals in People v Mitchell (80 NY2d 519, supra) was called upon to determine whether the Antommarchi decision was based upon their interpretation of what State law mandated or what the Constitution of the United States required.
This court is called upon, in a case of first impression, to make a similar determination regarding the Sloan decision (supra). In doing so the court gives heed to the statement of *267 Mr. Justice Cardozo in Snyder v Massachusetts (291 US 97, supra), which is pertinent on any occasion when a court must determine the scope of a superior court’s precedent. Cardozo said: "A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence.” (Supra, at 114.)
According to the defendant, the phrasing used by the Court of Appeals in both Antommarchi (supra) and Mitchell (supra) to characterize Sloan (supra), "assumed that Sloan was retroactive” because the Court said "the defendants’ presence at the side-bar questioning of prospective jurors about the effects of pretrial publicity 'could have had a substantial effect on their ability to defend against the charges’ ” (defendant’s mem of law, at 7, 8 [emphasis supplied]). The defendant contends, therefore, that the determination that Sloan is premised upon due process rights flowing from the Constitution of the United States is foreshadowed by language used by the Court of Appeals in Antommarchi and Mitchell.
This court does not believe that the defendant’s interpretation, which will have a devastating impact upon the criminal justice system,* 1[2] should be adopted because "it can be fitted to *268 the words” of a rule wrought under the pressure of a particular and distinct situation. The Court of Appeals could have said that the decision in Sloan (supra) was premised upon the Constitution of the United States per se or the Constitution of the United States as a separate and independent ground in addition to State law. It didn’t. In this court’s opinion, the Sloan decision was based upon the requirements of our own body of State law because all the Court needed to announce was a prospective rule that would have a salutary effect upon the criminal justice system thenceforth.* *[3]
The Court of Appeals discussion in Sloan (supra) of the scope of what has been assumed to be the due process right to be present[4] and its use of language discussing that right in a speculative way (e.g., "[Defendants’ presence here could have *269 had a substantial effect on their ability to defend against the charges.” [79 NY2d 386, 392, supra]) is not at all inconsistent with the fact that the Sloan determination was based upon our own body of State law and not Federal due process. The Court made it clear in People v Morales (80 NY2d 450) that although the statutory provision (CPL 260.20) mandating that a "defendant must be personally present during the trial of an indictment” is "coextensive with Federal due process,” some of their decisions interpreting the statute give greater protection than appear to be constitutionally required (supra, at 456). That is precisely because, as the Court has said, "[B]ased on our own body of State law, we look to the effect that defendant’s absence might have on the opportunity to defend.” (People v Morales, supra, at 456.)
Snyder v Massachusetts (291 US 97, supra), which defines the scope of the Federal due process right to be present, is merely a guide, although a persuasive one, as to the scope of the State body of law defining a defendant’s right to be present (see, People v Morales, supra, at 457). The Court of Appeals reference to the fact that "defendants’ presence * * * could have had a substantial effect on [his] ability to defend” (emphasis supplied) in Sloan (79 NY2d 386, 392, supra) and Mitchell (80 NY2d 519, 527, supra) does not, therefore, support the contention the defendant urges here: that the Court in Antommarchi (supra) and Mitchell assumed Sloan was retroactive because of its use of language reflecting the Federal due process test. By making this assumption, the defendant has fallen prey to "the tyranny of labels.”
RETROACTIVITY
Since the Sloan decision (supra) was based on the requirements of our own body of State law, New York’s rule on retroactivity as set forth in People v Pepper (53 NY2d 213) applies. As set forth in Pepper, the court is required to weigh three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application (supra, at 220). The analysis here is analogous to that engaged in by the Court in People v Mitchell concerning the Antommarchi rule (supra, at 528-529). Moreover, the comment made in Mitchell is equally apt here, that applying New York’s rule on retroactivity "permits this Court to expand the protection accorded defendants when we might otherwise hesitate to do so because *270 retroactive application threatens to ' "wreak more havoc in society than society’s interest in stability will tolerate” ’ ” (supra, at 528).
Considering the factors set forth in Pepper (supra), the court concludes that the Sloan rule should be applied only prospectively.
First, as in Antommarchi (supra), the purpose of the rule is not to cure any constitutional infirmity inherent in the former practices, but rather to permit a defendant a more active role in the examination and selection of potential jurors. Moreover the new rule relates to the fact-finding process only indirectly. Second, the trial courts have substantially relied on the prior practice which, prior to Sloan (supra), was frequently engaged in in Suffolk County and approved by appellate courts (see, People v Laezza, 143 AD2d 289; People v Ryan, 93 AD2d 848).
Finally, applying Sloan (supra) retroactively to cases pending on appeal would have a devastating impact upon the administration of justice. The court has already noted (n 2, supra) the amount of time this individual Trial Part of the County Court in a single county has devoted to sensational cases now pending on appeal. In each such case, the court engaged in a procedure of prescreening jurors in chambers in the presence of counsel but without the presence of the defendant to determine if they had been tainted by pretrial publicity. Although the number of cases where a new trial would be required is not as great as the number of new trials that would have resulted from a decision to apply Antommarchi (supra) retroactively, the impact on the criminal justice system would nevertheless be substantial since prescreening in relation to pretrial publicity occurred, perforce, only in the most notorious and time-consuming cases.
"The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true” (Snyder v Massachusetts, 291 US, supra, at 122, Cardozo, J.). The court feels that a decision to apply Sloan (supra) prospectively only from the date of the *271 decision represents an appropriate balance of the respective considerations involved. Accordingly, the defendant’s motion to vacate the judgment entered against him because he was not accorded the right to be present when the court and counsel prescreened potential jurors regarding the effect upon them, if any, of pretrial publicity and other extraneous information is denied.
CONCLUSION
For all of the reasons discussed herein, the defendant’s motion to vacate the judgment entered against him is denied in its entirety.

. "A defendant’s presence at trial is required not only by the Confrontation and Due Process Clauses of the Federal and State Constitutions (see, US Const 6th, 14th Amends; NY Const, art I, §6), but also by CPL 260.20, which provides that '[a] defendant must be personally present during the trial of an indictment.’ The statutory right, we have held, extends to 'the impaneling of the jury, the introduction of evidence, the summations of counsel, and the court’s charge to the jury’ (People v Velasco, 77 NY2d 469, 472; see, People v Sloan, 79 NY2d 386; People v Mullen, 44 NY2d 1, 4). In addition, due process requires that a defendant be present 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge’ (Snyder v Massachusetts, 291 US 97, 105-106; see, People v Mullen, supra, at 4-5; People v Ciaccio, 47 NY2d 431, 436).”

. In this Trial Part of the Suffolk County Court alone, five notorious trials held prior to Sloan (supra), consumed a significant amount of time and resulted in verdicts that are presently pending on appeal. In each case, the court engaged in a similar prescreening process to determine if any potential jurors were tainted by anything they might have read or heard about each case. The cases are:
1. People v Angelo (Suffolk County Ct, Tisch, J., indictment Nos. 1882-88, 38-88, 1499-87 [the "angel of death” who was convicted of multiple homicides for causing the deaths of four patients he attended to as a nurse at Good Samaritan Hospital]). His trial lasted approximately 2 V2 calendar months and his hearing took 4 days to complete.
2. People v Tankleff (Suffolk County Ct, Tisch, J., indictment Nos. 1535-88, 1290-88 [he was convicted of two counts of murder for killing his mother and father]). His trial took almost three calendar months and his pretrial and posttrial hearings lasted approximately five calendar weeks.
3. People v Gallagher (Suffolk County Ct, Tisch, J., indictment No. 139-88 [a former Chief of Police of the Suffolk County Police Department who was convicted of multiple crimes related to obtaining a favorable disposition of a drug case that was pending against his son]). His trial lasted more than one calendar week. *268 4. People v Killhane (Suffolk County Ct, Tisch, J., indictment No. 1982-89 [he was convicted of criminally negligent homicide for causing the death of a young female pedestrian who was crossing a highway when she was struck by the codefendant’s car while he was engaging in a drag race with the defendant]). His trial lasted more than three calendar weeks.
5. People v Cohen (this case). His trial lasted more than three calendar weeks.

. Although this court’s determination is based upon a finding that the Court of Appeals, while cognizant of the due process concerns underlying our body of State law concerning a defendant’s right to be present, premised its decision in Sloan (supra) on State law, it should be noted that the factual scenario in this case is distinguishable from that in Sloan. In Sloan, the questioning of the jurors related to more than just their knowledge and reaction to pretrial publicity; it also concerned their attitude toward the prosecution’s key witness (see, People v Sloan, 79 NY2d 386, 390).

. The Supreme Court "has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge’. * * * Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.” (Kentucky v Stincer, 482 US 730, 745.) It has never addressed the precise question of whether any due process right includes the right to be present during jury impanelling (United States v Alessandrello, 637 F2d 131 [3d Cir]). Moreover, the Court has recently refused to find a Fifth Amendment Due Process Clause violation where the court had an in-chambers discussion with a sworn juror in the presence of the defendant’s attorney but without the presence of the defendant. The Supreme Court, if called upon to do so, might reasonably find that the defendant’s presence in chambers when potential jurors are being prescreened to determine whether any of them have been tainted by exposure to pretrial publicity to the extent that they could not be fair and impartial would not contribute to the fairness of the procedure where competent counsel is present to represent the defendant’s interests.