[601 NYS2d 928]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
THOMAS HANNIGAN, Appellant.

Second Department, August 30, 1993

### APPEARANCES OF COUNSEL

*John F. Middlemiss, Jr.,* Riverhead *(Robert B. Kenney* of counsel), for appellant.

*James M. Catterson, Jr., District Attorney* of Suffolk County, Riverhead *(Karen Petterson* and *Adrienne Brewington* of counsel), for respondent.

### OPINION OF THE COURT

MANGANO, P. J.

The primary question to be resolved on this appeal is whether the holding of the Court of Appeals in *People v Sloan* (79 NY2d 386) should be applied retroactively to the instant case, or prospectively only. In our view, the holding in *People v Sloan (supra)* should be applied prospectively under this State's retroactivity rules.

I

The defendant was indicted, *inter alia,* for the brutal murder of Mrs. Judith Smith in her home in West Islip, Suffolk County, on August 17, 1988.

The record reveals that at the beginning of jury selection, the trial court, with defense counsel present in chambers but in the defendant's absence,[1] individually questioned 13 prospective jurors who had indicated that they had heard or read about the instant case in the news media.[2]

The defendant was ultimately convicted by the jury of the crimes charged, and was sentenced on July 27, 1989.

On April 7, 1992, the Court of Appeals held, in *People v Sloan* (79 NY2d 386, 390, *supra),* that a criminal defendant had the right to be present when jurors were questioned by the trial court at a side-bar voir dire with respect to their

---

1. In his supplemental brief, the defendant's appellate counsel asserts that trial counsel had advised him that the defendant was not present during these in-chambers screening conferences. In their supplemental brief, the People do not dispute this assertion.

2. Of these 13 jurors, 3 were eventually peremptorily challenged by the defense, and one was eventually chosen to sit on the jury as foreperson.

"knowledge of and reaction to pretrial publicity concerning the specific crime on trial and their attitude toward the prosecutor's key witness, a widely known television newscaster".

On appeal, the defendant argues that the holding of *People v Sloan (supra)* must be applied retroactively to the instant case, and since his right to be present was violated, his conviction must be reversed. It is to the issue of the retroactivity of *People v Sloan (supra)* an issue that has not been addressed by any appeals court in this State to date, that we now turn.

## II

In *People v Sloan (supra,* at 391) the Court of Appeals held that a criminal defendant had a "fundamental right" to be present during the trial court's side-bar voir dire of prospective jurors where the questions went beyond the prospective jurors' "general qualifications * * * and delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard" *(People v Sloan, supra,* at 392).

Specifically, the Court of Appeals stated: "Defendants' presence at the questioning on such matters and the resultant opportunity for them to assess the jurors' facial expressions, demeanor and other subliminal responses as well as the manner and tone of their verbal replies so as to detect any indication of bias or hostility, could have been critical in making proper determinations in the important and sensitive matters relating to challenges for cause and peremptories" *(People v Sloan, supra,* at 392).

In so holding, the Court of Appeals distinguished the case from *People v Velasco* (77 NY2d 469), where prospective jurors were being questioned about their qualifications "in the general sense—questions concerning such matters as physical impairments, family obligations, and work commitments" *(People v Sloan,* 79 NY2d, *supra,* at 392). It is crucial to note that the Court of Appeals, in *People v Sloan (supra,* at 391) cited CPL 260.20, its own cases, and New York Constitution, article I, § 6, as the bedrock of this "fundamental right".

Approximately six months later, the Court of Appeals expanded on *People v Sloan (supra)* by holding, in *People v Antommarchi* (80 NY2d 247), that the defendant also had the right to be present during a trial court's side-bar voir dire of

prospective jurors when more general and common questions about the prospective jurors' own background and experience were asked, e.g., "experiences as crime victims or relationships with people who had been arrested, and whether they thought that defendant was guilty merely because he had been charged with participating in a drug sale" *(People v Antommarchi, supra,* at 250). Again, citing CPL 260.20 and its own cases, including, *inter alia, People v Sloan (supra)* the Court of Appeals stated:

"As we have noted before, a defendant has a fundamental right to be present during any material stage of the trial *(see,* CPL 260.20; *People v Turaine,* 78 NY2d 871, 872; *People v Mullen,* 44 NY2d 1, 4-5) and questioning during the impaneling of the jury may constitute a material stage of the trial *(see, People v Sloan,* 79 NY2d 386; *People v Velasco,* 77 NY2d 469). A court may conduct side-bar discussions with prospective jurors in a defendant's absence if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments *(see, People v Velasco,* 77 NY2d, at 472-473, *supra).* The court may not, however, explore prospective jurors' backgrounds and their ability to weigh the evidence objectively unless defendant is present. Defendants are entitled to hear questions intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person's answers so that they have the opportunity to assess the juror's 'facial expressions, demeanor and other subliminal responses' *(see, People v Sloan,* 79 NY2d, at 392, *supra).*

"By questioning the prospective jurors' ability to weigh evidence objectively and to hear testimony impartially, the court violated defendant's right to be present during a material part of the trial. Moreover, because defendant had a fundamental right to be present, his failure to object to being excluded from the side-bar discussions is not fatal to his claim *(see, People v Dokes,* 79 NY2d 656, 662)" *(People v Antommarchi, supra,* at 250).

In *People v Mitchell* (80 NY2d 519), the Court of Appeals was confronted with the question of whether the *Antommarchi* rule was to be given retroactive application or only prospective application. The Court of Appeals held that "[i]f no Federal constitutional principles are involved * * * the question of retroactivity is one of State law" *(People v Mitchell, supra,* at 526). Since "*Antommarchi* was decided as a question of State law" *(People v Mitchell, supra,* at 526), the Court of

Appeals applied the three-pronged State test regarding the law on retroactivity set forth in *People v Pepper* (53 NY2d 213, *cert denied* 454 US 967). In *People v Pepper (supra,* at 220) the Court of Appeals held that the issue of retroactivity of a new rule was to be evaluated by three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application.

In applying the three factors set forth in *People v Pepper (supra)* the Court of Appeals held that "the *Antommarchi* rule should be applied only prospectively" *(People v Mitchell, supra,* at 528). Specifically, the Court of Appeals stated:

"First, the purpose of the rule is not to cure any constitutional infirmity inherent in the former practices, but rather to permit a defendant a more active role in the examination and selection of potential jurors. Moreover, it relates to the fact-finding process only indirectly and therefore retroactivity is not mandated *(see, People v Pepper, supra,* at 221; *People v Morales,* 37 NY2d 262, 269, *supra).* Second, the courts have substantially relied on the prior practice. In the absence of a formal protest, they have customarily examined prospective jurors in defendants' absence to expedite jury selection, to avoid juror embarrassment and to encourage juror candor.

"Finally, the voir dire process is involved in every jury trial and most if not all of the judgments of conviction in the cases currently on appeal will present an *Antommarchi* question. The reversal, or even the reconsideration, of these appeals on *Antommarchi* grounds would create a substantial burden on the administration of justice and delay the disposition of countless pending cases. In many of these matters no record was made because the parties did not perceive the necessity for one. Thus, hearings would presumably be required to reconstruct a record of conversations and questions which, at the time, none of the participants objected to or deemed of particular significance. Conceivably, new trials could be required in all of the substantial number of cases in which no record of the voir dire was made. Accordingly, we find substantial reasons to hold that the *Antommarchi* rule applies only to those cases in which jury selection occurred after October 27, 1992, the date *People v Antommarchi* was decided" *(People v Mitchell, supra,* at 528-529).

We discern no compelling reason to reach a different conclusion with respect to the rule set forth in *People v Sloan* (79

NY2d 386, *supra).* Although there is language in *People v Mitchell* (80 NY2d 519, *supra)* which indicates that *People v Sloan (supra)* implicates something more than a "statutory violation" *(People v Mitchell, supra,* at 527), that language is perfectly consistent with a reference to our State Constitution, rather than to any Federal constitutional principles.[3]

Since the *Sloan* rule is based on State law, this State's rule on retroactivity as set forth in *People v Pepper* (53 NY2d 213, *supra)* must be the starting point for our analysis.

### III

Applying the factors set forth in *People v Pepper (supra)* we note that the *Sloan* rule "relates to the fact-finding process only indirectly and therefore retroactivity is not mandated" *(People v Mitchell, supra,* at 528; *see also, People v Pepper, supra,* at 221; *People v Morales,* 37 NY2d 262, 269, *supra).* Secondly, "trial courts have substantially relied on the prior practice which, prior to *Sloan (supra),* was frequently engaged in in Suffolk County, and approved by appellate courts *(see, People v Laezza,* 143 AD2d 289; *People v Ryan,* 93 AD2d 848)" *(People v Cohen,* 158 Misc 2d 262, 270). Finally, applying the *Sloan* rule retroactively would create "a substantial burden on the administration of justice" *(People v Mitchell, supra,* at 529). As the County Court, Suffolk County, stated in *People v Cohen (supra,* at 270): "Although the number of cases where a new trial would be required is not as great as the number of new trials that would have resulted from a decision to apply *Antommarchi (supra),* retroactively, the impact on the criminal justice system would nevertheless be substantial since prescreening in relation to pretrial publicity occurred, perforce, only in the most notorious and time-consuming cases".[4]

Accordingly, we are of the view that the *Sloan* rule is to be

---

**3.** Indeed, relevant Federal cases which hold that *Sloan*-type interviews with jurors require the presence of the defendant are based primarily on rule 43 (a) of the Federal Rules of Criminal Procedure *(see, e.g., United States v Alessandrello,* 637 F2d 131, *cert denied* 451 US 949; *United States v Mackey,* 915 F2d 69; *United States v Alikpo,* 944 F2d 206).

**4.** Illustrative cases include, in Suffolk County alone, (1) *People v Angelo* (the defendant, a nurse, was convicted of multiple homicides for causing the deaths of four patients he attended to at Good Samaritan Hospital); (2) *People v Tankleff* (the defendant was convicted of two counts of murder for killing his mother and father); (3) *People v Gallagher* (the defendant, a former Chief of Police of the Suffolk County Police Department, was convicted of multiple crimes related to obtaining a favorable disposition of a

applied prospectively, i.e., only to those cases in which jury selection occurred after April 7, 1992, the date *People v Sloan* was decided. Since jury selection in the instant case occurred prior to April 7, 1992, the defendant's argument must be rejected.

IV

The defendant's remaining arguments are unpreserved for appellate review or without merit *(see, People v Contes,* 60 NY2d 620; CPL 470.15 [5]; 470.05 [2]; *People v Bigelow,* 66 NY2d 417; *People v Prochilo,* 41 NY2d 759). Therefore, the judgment is affirmed.

O'BRIEN, J., concurs in the result only, with the following memorandum. I disagree with my colleagues that we should consider, on this record, whether a violation of the rule in *People v Sloan* (79 NY2d 386) occurred and whether that rule should be applied retroactively or merely prospectively. The trial transcript is silent as to whether the defendant was present or absent when potential jurors were prescreened in the Judge's chambers, and no attempt was made by the defendant to clarify the record prior to the date the appeal was heard. It is the appellant's burden to ensure that the matters he wants reviewed are reflected in the record on appeal, and he may not rely on statements in his brief which are not presented by the record *(see,* 4 NY Jur 2d, Appellate Review, §§ 321, 323). An application to settle or correct the record should be made to the trial court within the appropriate time limits prior to the hearing of the appeal *(see,* CPLR 5525 [c]; 4 NY Jur 2d, Appellate Review, §§ 204, 205, 218). As the factual record here is insufficient to permit appellate review of the defendant's claim based on *People v Sloan (supra)* I would decline to reach the issue *(see, e.g., People v Kinchen,* 60 NY2d 772; *People v Weinberg,* 183 AD2d 930; *People v Fernandez,* 183 AD2d 605, *affd* 81 NY2d 1023).

Moreover, because no serious deprivation of constitutional rights occurred in this case *(cf., People v Castillo,* 80 NY2d 578), the interests of justice do not warrant remitting the matter to the trial court for the purpose of expanding the

---

drug case that was pending against his son); and (4) *People v Killhane* (the defendant was convicted of criminally negligent homicide for causing the death of a young female pedestrian who was crossing a highway when she was struck by the codefendant's car while he was engaging in a drag race with the defendant) *(see, People v Cohen, supra,* at 267, n 2).

record, particularly since the defendant failed to seek such relief.

I agree with my colleagues that the remaining issues raised in the defendant's brief are either unpreserved for appellate review or without merit, and that the judgment should be affirmed.

ROSENBLATT and COPERTINO, JJ., concur with MANGANO, P. J.; O'BRIEN, J., concurs in the result only, in a memorandum.

Ordered that the judgment is affirmed.