THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN AGUILAR, Appellant.

First Department, March 19, 1992

198

APPEARANCES OF COUNSEL

*Howard A. Pincus* of counsel *(Ira Mickenberg,* attorney), for appellant.

*Kathleen E. Fay* of counsel *(Hilary Hassler* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

Asch, J.

The defendant was found, by the police, inside a gas station where a glass panel on one of the drive-through doors of the garage had been broken. At a pretrial *Huntley* hearing, one of the arresting officers, Michael Sullivan, testified that the keys he had recovered from the defendant at the scene did not belong to the gas station. However, he conceded that he had testified at the Grand Jury that the keys "fit and worked" in the garage doors.

At the trial, Abe Parker, the owner of the Getty service station, testified that on December 22, 1989, at about 6:00 P.M., he closed and locked the service area of the station. This area contained a tow truck, other vehicles, computers, tools and garage equipment. The tools, parts and machines inside the premises were worth "roughly" $50,000 to $60,000. When he left for the evening, none of the glass panels on the rolling doors he had closed in the service area were broken. He testified that he had not given defendant permission or authority to enter or remain on the premises at any time.

A radio call reported a burglar alarm signal at the gas station received at 4:18 A.M. in the morning of December 23rd. In response, Officer Sullivan and his partner arrived at the scene about two or three minutes later. They observed that a glass panel on one of the drive-through doors of the service area had been broken and glass was strewn on the ground and inside the track of the door. One of the officers shined his flashlight through the hole on the garage door where the glass panel had been and saw the defendant standing in the back of the service area, among the tools and automotive parts. Officer Sullivan searched defendant and found a set of about 11 keys. After trying these keys on two of the doors inside the garage, the officer found one of the keys "fit" into one lock but could not open it.

The court committed reversible error when it gave supplemental instructions to the jury, in the absence of the defendant, without making inquiry and reciting on the record the facts and reasons it relied upon in determining that the defendant's absence was deliberate. *(See, People v Brooks,* 75 NY2d 898, 899, *mot to amend remittitur granted* 76 NY2d 746.)*

After the jury began its deliberations, the court excused the defendant and both attorneys and instructed them to return

at 2:30 P.M. The jury sent a message asking for supplemental instructions concerning intent and reasonable doubt at about 2:50 P.M. The court, at 4:05 P.M., noted the defendant's absence, and upon the consent of his counsel, gave the jury the supplemental instructions. The full extent of the court's comments on defendant's absence before reinstructing the jury was as follows:

"THE COURT: The jury is not present. Now, let the record show the defendant is not present. Court has received a message from the jury as of 1:50 p.m. *[sic]*. It is now almost five after four. The defendant is not present, and there's no indication that he is going to be present.

"Now, Mr. Patterson, do you consent that we go forward in the defendant's absence?

"MR. PATTERSON: Yes, Your Honor; just take the note, and you'll advise the jury that I'm consenting to that.

"THE COURT: Okay. All right. Now, bring the jury into the courtroom."

Since the court failed to inquire into the surrounding circumstances to determine if the defendant's absence was deliberate, and failed to recite, for the record, the facts and reasons it relied upon in reaching its determination, it committed reversible error *(see, People v Brooks, supra)*.

Pursuant to CPL 310.30, when a deliberating jury requests further instructions, the court "must" return the jury to the courtroom "and in the presence of the defendant", give these supplemental instructions. "A defendant has a fundamental right to be present at all material stages of a trial *(see, People v Ciaccio,* 47 NY2d 431, 436, *supra)*. CPL 310.30 makes a defendant's right to be present during instructions to the jury absolute and unequivocal *(see,* CPL 310.30; *People v Ciaccio, supra,* pp 436-437). Because this defendant was absent during a material part of his trial, harmless error analysis is not appropriate" *(People v Mehmedi,* 69 NY2d 759, 760). The presence of defendant during supplemental instructions is "constitutionally required" *(People v Ciaccio, supra,* at 436-437; *People v Cain,* 76 NY2d 119, 124; *see also,* US Const, 6th Amend; NY Const, art I, § 6).

However, a defendant who deliberately absents himself from the courtroom, after his trial has begun, forfeits his right to be present, regardless of whether he knows the trial will continue in his absence *(People v Sanchez,* 65 NY2d 436, 443-444; *see also, Taylor v United States,* 414 US 17).

■ The People assert that the defendant is precluded from raising this claim since there exists no factual record sufficient to permit appellate review. However, while the Court of Appeals has held that a record is necessary for appellate review (see, *People v Charleston*, 54 NY2d 622, 623; *People v Kinchen*, 60 NY2d 772, 774), we have, before us, a sufficient record for our determination. In *Brooks (supra)*, the Court of Appeals required that the court make inquiry *before* proceeding in the defendant's absence. Further, since an inquiry must be made before the instructions are given, the fact that defendant failed to explain his absence later, prior to sentencing, is irrelevant.

■ Contrary to the People's contention, the defendant's right to be present during the reading of the supplemental instructions was not waived by defense counsel's consent to proceed. "[T]he record is devoid of any indication that defendant ever exercised a knowing, voluntary and intelligent waiver of his right to be present at trial, or subsequently learned of and ratified counsel's waiver of this right. *(People v Windley*, 134 AD2d 386, 387 [2d Dept 1987]; *see generally, People v Parker*, 57 NY2d 136, 139-141 [1982].) Counsel's waiver, purportedly exercised on behalf of his client, is thus a nullity. *(People v Mehmedi*, 69 NY2d, *supra*, at 760.)" *(People v Carr*, 168 AD2d 213, 214.)

■ Further, the trial court erred in instructing the jury that defendant could be convicted of burglary if "at the time of his unlawful entry and remaining, he intended to commit a crime within the building". This instruction was critically misleading. In order to be guilty of burglary for unlawful entry (i.e., entry without license or privilege as charged by the People herein), the defendant must have had the intent to commit a crime at the time of entry. *(People v Gaines*, 74 NY2d 358, 363.) "The court should not have referred to unlawful remaining in its burglary charge, since the situation to which that language applies was not present in the case. Most importantly, defendant was entitled to a charge clearly stating that the jury must find that he intended to commit a crime at the time he entered the premises unlawfully." *(People v Gaines, supra*, at 363.)

Although *Gaines (supra)* condemns the use of the phrase "enters or remains" rather than the language "enters and remains" used in this case, the defendant was entitled to a charge which clearly established that intent must exist upon

entering. Mr. Parker, the owner, testified that he gave no permission or license to defendant to enter the premises, and the People did not attempt to establish that defendant exceeded a privilege, by remaining unlawfully, after a legal entry. Consequently, the "enters and remains" language which was used herein tended to suggest that defendant could form the necessary intent *after* entry, and was therefore not "a charge clearly stating that the jury must find that he intended to commit a crime at the time he entered the premises unlawfully". *(People v Gaines, supra,* at 363.)

Defendant contends that testimony from Officer Sullivan before the Grand Jury, that a key recovered from the defendant worked in a garage door, was false and, therefore, entitled him to a dismissal of the indictment. However, when Officer Sullivan testified at the Grand Jury, he did, in fact, believe the key would open the door, since it fit the lock, and believed it was only the cold that prevented the door from being unlocked on the night of the burglary. After his testimony, the officer went back to the garage and again tried the key with the same result—it fit in the lock but would not open the door. This information was disclosed to the prosecutor who, in turn, notified the defendant's counsel before the *Huntley* hearing.

In *People v Pelchat* (62 NY2d 97), upon which defendant relies, the indictment was dismissed and the conviction reversed because the evidence before the Grand Jury failed to meet legal standards and the prosecutor knew that when he permitted the court to take the defendant's plea. Here, in contrast, the mistaken Grand Jury testimony of Officer Sullivan with respect to the key working in the lock was not the only evidence before that body establishing that the defendant knowingly and unlawfully entered the garage with the intent to commit a crime. As noted above, the defendant was seen by the arresting officers, after the transmission of a burglar alarm from the subject premises, standing inside the locked service area, which had a broken pane in the door, in the midst of valuable automotive equipment and tools.

In addition, in *Pelchat (supra),* the prosecutor learned a month or so after the indictment that there was no evidence that the defendant committed any crime and that the indictment rested solely upon the arresting officer's incorrect testimony. The prosecutor never divulged this information to the court or to the defense counsel, and instead, allowed the defendant to plead guilty. Here, on the other hand, the

prosecutor learned of Officer Sullivan's mistaken testimony only a few weeks before the trial and immediately disclosed it to the defense, in time for counsel to use at the *Huntley* hearing, in an attempt to impeach the officer. Consequently, the integrity of the proceeding was not impaired by the subsequent discovery of the unintended infirmity in this one aspect of the Grand Jury evidence, and, therefore, did not warrant dismissal of the indictment *(see, People v Figueroa,* 167 AD2d 101).

Accordingly, the judgment of the Supreme Court, New York County (Albert Williams, J.), rendered July 2, 1990, after trial by jury, convicting defendant of burglary in the third degree, and sentencing him as a second felony offender, to a term of from two to four years, should be reversed, on the law, and the matter remanded for a new trial.

ROSENBERGER, J. P., WALLACH and RUBIN, JJ., concur with ASCH, J.; KUPFERMAN, J., concurs on constraint of *People v Brooks* (75 NY2d 898, 899, *mot to amend remittitur granted* 76 NY2d 746).

Judgment of the Supreme Court, New York County, rendered July 2, 1990, is reversed, on the law, and the matter remanded for a new trial.