■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS PEREZ, Appellant. [602 NYS2d 113] —Judgment of the Supreme Court, Bronx County (Antonio I. Brandveen, J.), rendered December 19, 1991, convicting defendant, after jury trial, of two counts of murder in the second degree, and one count each of attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree, and sentencing him, respectively, to consecutive terms of imprisonment of 25 years to life, 25 years to life, 8⅓ to 25 years, and 5 to 10 years, and to a concurrent term of 5 to 15 years, affirmed.

The overwhelming evidence in this case establishes that, on the night of April 28, 1990, defendant Luis Perez lured Nelson Rivera and his friends Wakim Bayron, Manuel Allende and Carlos Young to the schoolyard of Public School 77 where they sat in a secluded area, recessed below ground level. After excusing himself to go to the bathroom, defendant returned with three accomplices, drew a 9mm pistol and ordered the four to their knees. He accused Rivera of "messing" with his girlfriend and, from a distance of between 6 and 8 feet away, discharged 15 rounds from the weapon at the 4 victims. Rivera died from bullet wounds to the heart, left arm and head. Carlos Young died from multiple gunshot wounds of the chest and left leg.

Wakim Bayron, who sustained multiple gunshot wounds to the legs, and Manuel Allende, who sustained single bullet wounds to the abdomen and the upper leg, survived the assault. Bayron identified defendant as his assailant to the police officer who first arrived on the scene. At trial, both

Bayròn and Allende testified against defendant, who was also known to them as "Boobie".

With respect to the instructions given to the jurors, Supreme Court properly denied defendant's request to charge manslaughter in the second degree as a lesser included offense of depraved indifference murder in the second degree. The overwhelming evidence that defendant lured four acquaintances to a secluded location, ordered them to their knees and fired 15 shots at them at close range permits no reasonable view of the evidence to support a conclusion that defendant committed the lesser but not the greater offense *(People v Glover,* 57 NY2d 61, 63). Nor is there any reasonable view of the evidence which would support defendant's unpreserved claim that the trial court should have, *sua sponte,* instructed the jury on reckless assault in the second degree as a lesser included offense of depraved indifference assault in the first degree *(supra).*

Contrary to defendant's contention, both at trial and on appeal, Supreme Court properly submitted the various reckless and intentional counts contained in the indictment to the jury in the alternative (CPL 300.40 [5]; *People v Gallagher,* 69 NY2d 525, 530).

As to the right to be present during trial (CPL 260.20), there is no merit to defendant's contention that he was "excluded from the robing room and sidebar questioning of prospective jurors." While inquiry into a prospective juror's exposure to pretrial publicity about the case is ordinarily a matter to be "addressed in a formal voir dire" *(People v Sloan,* 79 NY2d 386, 392), *Sloan* does not address the circumstances presented by the instant appeal where defense counsel, as a matter of trial tactics, expressly requested that the court conduct such inquiry in camera. Invited to inquire what a prospective juror might have heard, defense counsel stated: "That's what I was going to suggest, that we not do it with the other prospective jurors. So at some point I would ask the Court to bring him into the robing room and let him tell us what he has learned of this case."

Indeed, it was the prosecutor, Mr. Turkin, who expressed reservation about this procedure:

"MR. TURKIN: Judge, there have been some recent decisions. Is Mr. Torres waiving his client's appearance at this point in time or has he discussed it with him? Because I don't want to go any further if he's not going to do that.

"THE COURT: He doesn't have to waive or not waive. The

court's decision says at this point they have talked to each other. He has already indicated that he has had enough time.

"MR. TORRES [Defense Counsel]: We have conferred, Judge.

"THE COURT: So I don't think we need a waiver.

"MR. TURKIN: Fair enough.

"THE COURT: But let me ask you, do you want the defendant here?

"MR. TORRES: No, I've spoken to him.

"THE COURT: Okay."

The record reflects that, on at least a half-dozen occasions, defense counsel responded affirmatively to questions by the court and the court clerk: "Have you had sufficient time to discuss jury selection with your client?" and "Did you have an opportunity to talk to your client?" and similar queries.

It is apparent that defense counsel sought to avoid prejudice to defendant which might have resulted from permitting venire members, ultimately selected as jurors, to listen to rumors and reports about the crime that others might have heard in the community or read in the press. The questioning of prospective jurors in camera was therefore the result of a deliberate trial stratagem employed by the defense. Moreover, of the four prospective jurors questioned regarding pretrial publicity, none served on the jury. Thus, the rationale underlying defendant's presence—to permit him to assess the verbal and subliminal responses of prospective jurors for indications of bias or hostility—is inapposite under the circumstances *(People v Sloan, supra,* at 392), and any loss of opportunity to observe the venire members which was occasioned by counsel's chosen stratagem cannot be said to have operated to defendant's prejudice.

The right of a defendant to be present during the material stages of his trial has been subject to increasingly strict interpretation. In *People v Mullen* (44 NY2d 1, 5), the Court of Appeals stated, "whether the mandate requiring the presence of a defendant at the trial of his indictment stems from due process or statute, literal application of its directive is not demanded. Common sense dictates that substantial performance of its terms is sufficient". Recently, by contrast, the right to be present during the questioning of prospective jurors which "delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard" *(People v Sloan, supra,* at 392) was extended to any inquiry "intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony

of potential witnesses" *(People v Antommarchi,* 80 NY2d 247, 250) and was categorized as a "fundamental right" which may be asserted on appeal despite a failure to raise any objection at trial *(supra,* at 250, citing *People v Dokes,* 79 NY2d 656, 662).

In the matter before us, however, the conduct on the part of the defense transcends the mere failure to raise the appropriate objection. Defendant, represented by competent counsel, requested that certain prospective jurors be questioned in camera and, after consultation with his attorney and after the court expressly reminded counsel of defendant's right to be present, nevertheless elected to permit questioning to proceed in his absence. The record before us amply demonstrates that defendant waived the right to be present during the questioning of the subject prospective jurors. Nothing in the cases cited by defendant on appeal suggests that the right now asserted by defendant is not subject to waiver. Nor does defendant contend that his attorney misrepresented to the court his willingness to allow inquiry of the venire members to proceed in his absence. Furthermore, irrespective of the question of waiver, no prejudice resulted from defendant's absence during this inquiry because the prospective jurors were all subsequently excused from service on the panel. Finally, we note that the Appellate Division, Second Department has recently ruled that *People v Sloan (supra),* upon which defendant relies, should be given only prospective effect *(People v Hannigan,* 193 AD2d 8).

Defendant's other contentions have been examined and found to be without merit. Concur—Sullivan, J. P., Asch and Rubin, JJ.

Rosenberger, J., concurs in a separate memorandum as follows: While I concur in the result, I do so only because none of the prospective jurors questioned in the defendant's absence were ultimately selected to serve on the jury which convicted him *(see, People v Johnson,* 191 AD2d 349).

However, contrary to the view espoused by my colleagues, the record fails to support a finding that the defendant waived his right to be present during the questioning of the four prospective jurors. Counsel's pronouncements to the court that he had spoken to his client and that he did not want his client to be present were insufficient to establish that the defendant himself exercised a knowing, voluntary, and intelligent waiver of his right to be present at the proceedings. The record is also barren of any indication that he subsequently learned of and

ratified counsel's waiver of this right *(People v Carr,* 168 AD2d 213). Counsel's purported waiver on behalf of his client was, therefore, a nullity *(People v Barker,* 183 AD2d 835; *People v Aguilar,* 177 AD2d 197; *People v Carr, supra).*