■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO ROMAN, Appellant. [630 NYS2d 58] —Judgment, Supreme Court, New York County (Edward Sheridan, J.), rendered February 9, 1993, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to 20 years to life, affirmed.

Defendant claims that his right to be present was violated when the court conducted a sidebar conference with a prospec-

tive juror in his absence on October 28th. While the dissent also asserts that "[t]he record does not indicate the defendant's presence at the aforementioned sidebar conducted on October 28th", it is the burden of the defendant to provide an adequate record with respect to his absence from sidebar conferences (*People v Arhin*, 203 AD2d 62, 62-63, *lv denied* 83 NY2d 908). Consequently, this claim is unreviewable, since the record before us is inadequate to show the substance of the discussion or even the identity of the juror.

The record also discloses that defendant was not denied his right to be present where a second juror stated in open court that she had been recently victimized in the presence of her child. The defendant was present when the juror made this statement. During the subsequent off-the-record discussion with defendant's counsel, she stated that she could not be fair. She was ultimately challenged for cause with defendant's consent. Defendant never challenged his attorney's confirmation that the retained jurors were acceptable to the defense (*People v Shabani*, 203 AD2d 142, *lv denied* 84 NY2d 832). While the dissent would impose a rigid, mechanistic rule requiring automatic reversal under these circumstances, the Court of Appeals and this Court have imposed no such requirement. *People v Ahmed* (66 NY2d 307), cited by the dissent, involved the absence of the Trial Judge and the delegation of some of his duties to his law secretary during a part of the jury's deliberations. In *People v Mitchell* (80 NY2d 519), the holding dealt only with the retroactive application of *People v Antommarchi* (80 NY2d 247), and the Court of Appeals noted that in *Antommarchi*, "we permitted defendant to successfully raise the question on appeal notwithstanding his failure to object to exclusion from the side-bar conferences during jury selection. The defendant could have waived his presence, of course (*see, People v Webb*, 78 NY2d 335, 339-340), but no waiver had been requested because under the existing practice there was no reason to do so". (*People v Mitchell, supra*, at 525.)

While, therefore, the Court of Appeals has not spoken on the issue before us, this Court has held, a year and a half *after* the decision in *Mitchell*, in a case where no prospective juror who was questioned in the absence of defendant was selected to serve on the jury that "any loss of the opportunity to observe prospective jurors cannot be said to have operated to defendant's prejudice" (*People v Shabani, supra*, at 143; *see also, People v Arhin*, 203 AD2d 62, 63, *supra*). In *People v Perez* (196 AD2d 781, *lv denied* 82 NY2d 900), also decided by us *after* the

decision in *Mitchell,* we held a defendant to have waived the right to be present by affirmatively seeking inquiry in camera. It is noteworthy, that, in *Perez,* although one member of the panel did not agree with the theory of waiver, he concurred in the result since "none of the prospective jurors questioned in the defendant's absence were ultimately selected to serve on the jury which convicted him" (*People v Perez, supra,* at 784 [Rosenberger, J., concurring]).

Defendant's contention that the prosecutor became an unsworn witness when he cross-examined him about prior conflicting statements which he made pursuant to a cooperation agreement with the prosecutor is unpreserved and we decline to review it in the interest of justice. If we were to review it, we would find that the prosecutor laid a proper foundation and had a good faith basis for his questioning after defendant stated during his direct testimony that a prosecution witness was the mastermind of the underlying robbery (*People v Wise,* 46 NY2d 321, 326; *People v Gordon,* 202 AD2d 166, 168, *lv denied* 83 NY2d 911).

We have considered defendant's remaining contention and find it to be without merit. Concur—Rosenberger, Nardelli and Williams, JJ.

Murphy, P. J., dissents in a memorandum as follows: In *People v Antommarchi* (80 NY2d 247), the Court of Appeals reiterated that insofar as voir dire concerns the capacity of a juror for impartiality, it is a material stage of the trial at which the defendant has the right to be present. Indeed, in reaffirming the statutory right of a defendant to be present and participate along with counsel during the substantive portions of the voir dire proceeding, the Court indicated with evident resolve that the practice of conducting voir dire out of the defendant's presence would no longer be tolerated and that, as with the denial of the right to be present at any other material stage of the trial, such a denial at voir dire would result in a reversal and a new trial regardless of whether the error had been preserved or whether there had been prejudice to the defendant (*supra,* at 250). It was, in fact, an essential premise of the subsequent decision in *People v Mitchell* (80 NY2d 519), holding *Antommarchi* applicable prospectively only, that *Antommarchi* constituted a marked change if not in the state of the underlying law, at least in the Court's attitude toward its enforcement; a practice which had been widely tolerated was by reason of *Antommarchi* to be categorically discontinued and it was in the end to avoid the costly and disruptive effects of too abrupt and unheralded a change that the usual rule to the

effect that appellate law is applicable to all cases still pending upon the appellate ladder, was excepted to (*People v Mitchell, supra,* at 529-530).

In the case at hand, the defendant maintains that he was on two occasions occurring, respectively, on October 28th and 29th, 1992—subsequent to the Court of Appeals decision in *Antommarchi (supra)*—denied his right to be present and participate during the conduct of voir dire. On the first of these dates a prospective juror approached the bench to discuss whether he could accept and apply the law as explained by the Judge, and on the second, the court had a discussion with a different potential juror focusing upon her capacity to remain objective despite having been a victim of crime.

The record does not indicate the defendant's presence at the aforementioned sidebar conducted on October 28th.[1] Moreover, the exclusion of the defendant from the October 29th sidebar is conceded by the People.[2]

The People seek to avoid the adverse dispositive effect of these exclusions by speculating that although the defendant was not present he might nonetheless have overheard what transpired between the court and the prospective jurors at the sidebars. The acuity of the defendant's hearing, however, cannot be presumed, nor is it even a relevant point of inquiry where as here it is clear that regardless of what he may have overheard, the defendant was by reason of his exclusion effectively prevented from participating in his defense during a material stage of the proceedings. Plainly, the right to be present during the trial of an indictment entails more than passive audition. The defendant's presence is required not so that he or she may bear mute witness to the proceedings but in order to assure him or her the opportunity actively to participate in the defense. Obviously, the circumstance that a defendant otherwise excluded from the proceedings might nonetheless have been within earshot cannot be viewed as satisfying either the letter or the purpose of the statutory imperative that "[a] defendant must be personally present during the trial of an indictment" (CPL 260.20).

---

1. It should be noted that notwithstanding the People's reliance thereupon, the record in no way contradicts the defendant's claim of exclusion as the relevant portion states merely:

"JUROR: Your honor? May I come up?

"THE COURT: Sure.

"(Whereupon, there was an off-the-record discussion held.)"

2. The concession, while commendable, cannot be characterized as generous since the record states with respect to the sidebar that it was conducted "by the bench with counsel present *but not the defendant*" (emphasis added).

Nor can abrogation of the statute's command be excused as harmless, for even if it were true, as the People contend, that, at least with respect to the exclusion on October 29th, the defendant suffered no resultant prejudice since the prospective juror then interviewed was discharged on consent, this would not alter the fact that harmless error analysis has with one extremely narrow exception not here relevant[3] been deemed categorically inapplicable where the defendant's right to be present has been infringed (*see, People v Cain*, 76 NY2d 119, 121, 124; *People v Mehmedi*, 69 NY2d 759, 760-761). Indeed, if it was not already evident from *Antommarchi (supra)*, the Court in *People v Mitchell (supra)* was explicit that, as with any other violation of the right to be present at a material stage of the trial, the exclusion of a defendant from substantive voir dire inquiry would result in automatic reversal regardless of whether the defendant had been prejudiced. Respecting the predicate for the reversal ordered in *Antommarchi*, the *Mitchell* Court observed: "The analysis in *People v Antommarchi* proceeded in a general rather than fact-specific manner. It involved none of the balancing process employed in constitutional determinations, *but rather was based on a violation of CPL 260.20. We did not evaluate the facts in light of the entire record nor did we make a determination that defendant's ability to defend against the charges had been substantially impaired* [citation omitted]" (*supra*, at 527 [emphasis added]).

Having complained bitterly about the new per se rule of reversal articulated in *Antommarchi (supra)*, and on the basis of this claimed "newness" succeeded in limiting *Antommarchi's* applicability to cases in which the challenged voir dire proceedings occurred subsequent to *Antommarchi (see, People v Mitchell, supra*, at 529), it is hardly consistent for the People to claim as they do here that *Antommarchi* did not after all articulate a per se rule but that, as was the case prior to *Antommarchi*, each violation of the defendant's right to be present must be separately assessed to ascertain whether the error substantially impaired the defendant's ability to defend against the charges. Nor are the People content simply to urge what amounts to reestablishment of the pre-*Antommarchi* status quo. In addition to contending that, *Antommarchi* notwithstanding, courts should make nice assessments of prejudice in each case of exclusion, they would also impose upon the courts the burden of conducting audibility hearings at which the defendant as a condition of prevailing upon an *Antommarchi*

---

**3.** This exception occurs in the *Sandoval* context where the court's ruling is "wholly favorable" to the defendant (*People v Favor*, 82 NY2d 254, 267).

claim would have to establish that although excluded from voir dire in violation of the law, he or she did not chance to overhear the sidebar exchange. While such "modest proposals" may fall within the legitimate ambit of zealous advocacy, their embrace by this Court in the present precedential context hardly discharges the primary judicial obligation to decide cases in accordance with the law.

For years prior to *Antommarchi (supra)* the basic statutory injunction requiring the defendant's physical presence during the trial of an indictment was widely disregarded by courts, both trial and appellate, in the context of jury impanelment (*see, People v Mitchell, supra*, at 529). While this practice was undoubtedly rooted in solicitude for the privacy of potential jurors, it was nevertheless significantly at variance with what the statute required not of prosecutors or law enforcement personnel but of the court itself. Intent upon ending this widespread and long countenanced judicial departure from " 'the mode of proceedings prescribed by law' " (*People v Ahmed*, 66 NY2d 307, 310; *see also, People v Mehmedi*, 69 NY2d 759, 760, *supra; People v Dokes*, 79 NY2d 656, 662), the Court in *Antommarchi* held no more than that the remedy ordinarily applicable for such a departure, namely automatic reversal, was applicable as well where a court's voir dire procedures excluded the defendant from active participation in jury selection, by then long acknowledged a material stage of the trial (*see, People v Sloan*, 79 NY2d 386; *People v Velasco*, 77 NY2d 469). While concerns over the far-reaching administrative consequences entailed by *Antommarchi's* retrospective application militated in favor of limiting the precedent's reach to after-occurring violations of the defendant's right to be present during voir dire, there is when all is said and done no viable argument, much less legal authority, for the *prospective* limitations upon the holding now acquiesced in by the majority. Surely, there must be some end to judicial tolerance of basic judicial error particularly where, as here, the error is of a kind at once potentially grave in consequence and wholly avoidable. Regrettably, neither this simple and hardly subtle teaching of *Antommarchi* nor the case's even more explicit and plainly controlling holding, appears to have entered into the court's decisional equation.

The judgment rendered on February 9, 1993 should be reversed and the case remanded for a new trial.

