82 N.Y.2d 254 (1993)
624 N.E.2d 631
604 N.Y.S.2d 494
The People of the State of New York, Respondent,
v.
Donald Favor, Appellant.
The People of the State of New York, Respondent,
v.
Leroy Smith, Jr., Appellant.
Court of Appeals of the State of New York.
Argued September 8, 1993.
Decided October 19, 1993.
Edward J. Nowak, Public Defender of Monroe County, Rochester (Drew R. DuBrin of counsel), for appellant in the first above-entitled action.
Howard R. Relin, District Attorney of Monroe County, Rochester (Wendy Evans Lehmann of counsel), for respondent in the first above-entitled action.
Howard K. Broder, Rochester, for appellant in the second above-entitled action.
Richard M. Healy, District Attorney of Wayne County, Lyons (Valerie Friedlander of counsel), for respondent in the second above-entitled action.
Kevin M. Dillon, District Attorney of Erie County, Buffalo, for New York State District Attorneys Association, amicus curiae, in the first and second above-entitled actions.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., SMITH and LEVINE concur with Judge TITONE; Judge BELLACOSA dissents and votes to affirm in a separate opinion.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., BELLACOSA, SMITH and LEVINE concur.
*258 TITONE, J.
In People v Dokes (79 N.Y.2d 656), this Court held that a defendant has a right to be present during the Sandoval hearing preceding the trial[1] except when such presence would be "superfluous" (see, 79 NY2d, at 662). We also held that a violation of this right ordinarily requires reversal even in the absence of a timely objection (id.). Our prior holdings, however, leave open at least one important question. Although we have decided several other cases under the Dokes rule (People v Cruz, 81 N.Y.2d 738; People v Gebrosky, 80 N.Y.2d 995; People v Beasley, 80 N.Y.2d 981; *259 People v Rose, 80 N.Y.2d 802; People v Alexander, 80 N.Y.2d 801), we have not previously been asked to consider the degree to which that rule should be applied retroactively and, thus, the retroactivity question remains unsettled (see, People v Callahan, 80 N.Y.2d 273, 284, n). These cases, both of which were tried before this Court handed down its decision in Dokes and both of which have been submitted with briefs raising retroactivity as an issue, present us with an opportunity to resolve that important question.

I.
People v Favor
Prior to defendant Favor's trial, the court held an in camera conference to determine which prior convictions and bad acts the prosecutor would be permitted to raise on cross-examination if defendant elected to testify. Defendant was not present during this proceeding, although he was present in the courtroom when the trial court subsequently described the gist of the in camera discussion and set forth its Sandoval decision.
Following the trial, the jury returned a guilty verdict on the first two counts of the indictment. Defendant then pleaded guilty to the remaining counts with the understanding that the sentences imposed for these counts would run concurrently to the sentences to be imposed for the first two counts. On November 3, 1990, defendant was sentenced in accordance with this understanding.
On appeal from the judgment of conviction, defendant Favor argued that reversal was required because he had been deprived of his right to be present during a material stage of the trial. In a decision that was handed down some 13½ months before Dokes was decided, the Appellate Division declined to entertain defendant's argument, noting that the argument had not been "preserve[d]" by timely objection (172 AD2d 1052). After the decision in Dokes was announced, defendant was granted leave to appeal by a Judge of this Court.
People v Smith
Defendant was charged with participating in a robbery that resulted in the killing of a bartender. During a pretrial colloquy conducted on December 10, 1990 in open court and in defendant's presence, the prosecutor asked the court whether it wished to "address the [Sandoval] issues on the record." *260 When the court responded affirmatively, the prosecutor indicated that there were 14 prior incidents in issue and alluded to a prior "ruling" precluding the People from using all 14 for cross-examination. At that point, the transcript minutes indicate that "a brief discussion was held off the record between the court and counsel."
When the recorded part of the proceeding resumed, in defendant's presence, the prosecutor announced that the court "has advised that [the People] would not be allowed to use the combined 14 matters but would [be] limit[ed]" to the use of four specific prior incidents occurring in 1987, 1988 and 1989. The court then invited defense counsel to comment, and counsel responded by arguing that the People should be precluded from using one of the identified four because he had not received timely notice of the People's intention to use it. Use of the other three, defense counsel argued, should be forbidden to the extent that they involved larcenies, since "unlawful taking" was also one of the elements before the jury in the upcoming trial for robbery. After hearing further argument from the prosecutor, the trial court ruled in the People's favor with respect to all four of the remaining incidents.
Defendant was ultimately tried and convicted of several of the charged crimes. On his appeal from the judgment of conviction, the Appellate Division held that defendant's exclusion from the bench conference at which the Sandoval issues were discussed did not require reversal because the outcome of that conference  the preclusion of 10 of the 14 prior incidents  was not prejudicial to defendant and, with respect to the remaining four, a full de novo hearing had been held in defendant Smith's presence. This appeal, taken by permission of a Judge of this Court, ensued.

II.
Traditional common-law methodology contemplates that cases on direct appeal will generally be decided in accordance with the law as it exists at the time the appellate decision is made (see, Vandenbark v Owens-Ill. Co., 311 US 538; United States v Schooner Peggy, 1 Cranch [5 US] 103, 110; Gurnee v Aetna Life & Cas. Co., 55 N.Y.2d 184; Gager v White, 53 N.Y.2d 475, cert denied sub nom. Guertin Co. v Cachat, 454 US 1086; People v Pepper, 53 N.Y.2d 213, 219; see also, Griffith v Kentucky, 479 US 314). This principle follows quite naturally from *261 the bedrock assumptions that "our government is one of laws, and not of men" and that, consequently, judicial decisions reveal or elucidate, rather than create, the law (see generally, Linkletter v Walker, 381 US 618, 622-623; People v Pepper, supra, at 220; see also, Desist v United States, 394 US 244, 258-259 [Harlan, J., dissenting]). Taken to their logical conclusion, these assumptions lead to the tenet that recently announced rules of law, including those that overrule prior decisions, are "not `new law but an application of what is, and theretofore had been, the true law'" (Linkletter v Walker, supra, at 623, quoting Shulman, Retroactive Legislation, 13 Encyclopaedia of Social Sciences, at 355, 356 [1934]). Accordingly, under this view, retroactive application of current rules is always required, since it would be unthinkable to apply anything less than the "true" law to an actual controversy.
In contrast to this view, some courts and scholars have recognized that "judges do in fact do something more than discover law" (Linkletter v Walker, supra, at 623) and that unwavering insistence on retroactivity is "out of tune with actuality largely because judicial repeal ofttime d[oes] `work hardship to those who [had] trusted to its existence'" (id., at 624, quoting Cardozo, Address to the NY Bar Assn, 55 Rep NY St Bar Assn 263, 296-297). Recognizing the pragmatic wisdom of these observations, the courts have been willing to temper what would otherwise be "an absolute rule of retroaction" and, "in appropriate cases," to limit their new rules of law to prospective application (Linkletter v Walker, supra, at 628-629; see, e.g., James v United States, 366 US 213; Great N. Ry. v Sunburst Co., 287 US 358, 364; People v Mitchell, 80 N.Y.2d 519).
While the Supreme Court has steered away from the Linkletter position, at least for criminal appeals that have not yet become final (Griffith v Kentucky, 479 US 314, supra; cf., Teague v Lane, 489 US 288; see also, Graham v Collins, 506 US ___, 113 S Ct 892, 122 L Ed 2d 260),[2] we have recently reaffirmed the principle of prospective application of decisional *262 law by holding that a new rule of State law need not automatically be applied to all cases currently in the direct appellate pipeline (People v Mitchell, supra, at 526-528; see, American Trucking Assns. v Smith, 496 US 167, 177 ["state courts generally have the authority to determine the retroactivity of their own decisions"]). Accordingly, when confronted with a direct appeal that implicates a newly announced State rule of law, an appellate court must consider the threshold question of retroactivity, weighing three basic factors  "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application" (People v Mitchell, supra, at 528). Application of these factors, which are derived from this Court's earlier decision in People v Pepper (supra, at 220; see also, People v Morales, 37 N.Y.2d 262, 268-269), will determine whether a new rule should be given retroactive effect.

III.
Turning to the dispute before us, we initially reject both defendants' contentions that the Dokes rule rests on Federal constitutional due-process principles and that, consequently, the Mitchell-Pepper retroactivity test is inapplicable here. Although the Dokes opinion makes reference to the Federal due-process standard (79 NY2d, at 659, 662, quoting Snyder v Massachusetts, 291 US 97, 106-107), it ultimately characterized the question before it as one "concern[ing] the right conferred by CPL 260.20" (79 NY2d, at 662). Moreover, any question as to Dokes' doctrinal underpinnings has been answered by our subsequent decision in People v Morales (80 N.Y.2d 450, 456), in which we cited Dokes as an example of "our decisions [that] give greater protection than appears to be constitutionally required [under Federal due-process rules]". Thus, as is the case with the right recognized in People v Antommarchi (80 N.Y.2d 247; see, People v Mitchell, supra, at 526-527), the right to be present that we recognized in Dokes is derived from the State statutory right to be present at "material" stages of the proceeding (CPL 260.20; see generally, People v Mullen, 44 N.Y.2d 1). Accordingly, we are free to apply our own State three-factor analysis in determining whether the Dokes rule should be given retrospective effect (People v Mitchell, supra, at 526-527).

IV.
The threshold question under that analysis is whether *263 Dokes is really a "new" rule of law at all. Of course, a judicial holding overruling established precedent should, in most instances, be considered a "new" rule requiring analysis under the Pepper-Mitchell factors (see, Graham v Collins, 506 US, at ___, 113 S Ct, at 897-898, 122 L Ed 2d, at 269-270, supra; Chevron Oil Co. v Huson, 404 US 97, 106-107, cited with approval in Gurnee v Aetna Life & Cas. Co., 55 N.Y.2d 184, 192, supra). Similarly, a "new" rule may be created when "there has been such a sharp break in the continuity of law that its impact will `wreak more havoc in society than society's interest in stability will tolerate'" (Gager v White, supra, at 483, quoting Fairchild, Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting", 51 Marq L Rev 254). Finally, a departure from the general rule of retroactive application may be warranted where a court's recent holding "represented a dramatic shift away from customary and established procedure" (People v Mitchell, supra, at 525).
On the other hand, "[a] judicial decision construing the words of a statute [for the first time] does not constitute the creation of a new legal principle" (Gurnee v Aetna Life & Cas. Co., supra, at 192). Further, retroactivity should not be in question when a court's ruling merely applies previously established principles in a new factual setting or settles a question in a manner that was clearly foreshadowed (see, Gurnee v Aetna Life & Cas. Co., 55 N.Y.2d 184, 192, supra; see also, Yates v Aiken, 484 US 211; cf., Gager v White, supra; see also, Chevron Oil Co. v Huson, supra, at 106). Whatever criteria are used to define the concept of a "new" rule of law, care must be taken to assure that it remains a relatively narrow one, lest the exception swallow up what has always been considered the normal rule in legal methodology  i.e., that cases should be decided on the basis of the law as it exists at the time of decision.[3]
*264 When these principles are applied in this context, substantial questions may be raised as to whether Dokes, the judicial holding in issue, is really a "new" rule at all. Before Dokes, this Court had, on many recent occasions, explained and elaborated upon the right to be present that is conferred by CPL 260.20. We had held that the right includes the prerogative to be present at a hearing to elicit testimony from a witness about the accused's alleged intimidating conduct (People v Turaine, 78 N.Y.2d 871), at a rereading of a portion of the court's charge to the jury (People v Cain, 76 N.Y.2d 119), at pretrial hearings where factual questions are to be determined (People v Anderson, 16 N.Y.2d 282) and at any proceeding in which the defendant's presence is substantially and meaningfully related to the ability to defend (People v Ciaccio, 47 N.Y.2d 431, 436; People v Mullen, 44 N.Y.2d 1, 4-5, supra). Additionally, our pre-Dokes cases were consistent in identifying the defendant's personal knowledge of relevant factual matters as among the most important factors in determining whether the right to be present is applicable to a particular proceeding (see, People v Turaine, supra, at 872; People v Anderson, supra, at 288). In contrast, the cases in which we held the right to be present inapplicable uniformly involved proceedings in which only questions of law, procedure or ministerial matters were discussed (e.g., People v Velasco, 77 N.Y.2d 469; People v Rodriguez, 76 N.Y.2d 918; see also, People v Ferguson, 67 N.Y.2d 383).
Given this background, it cannot be said that Dokes broke any new legal ground (see, Teague v Lane, supra, at 301 [O'Connor, J.]). We relied heavily in Dokes on prior case law, which, we observed, established the defendant's "peculiar knowledge" of relevant factual matters as "a key factor" in determining whether the defendant has a right to be present (79 NY2d, at 659-660). We then reasoned that if this factor were found to be present in the Sandoval context, it would follow that "as in Anderson (supra) and Turaine (supra), * * * the defendant has a right to be present" (79 NY2d, at 660). Having set forth this syllogism, we considered the precise nature of the Sandoval proceeding, making special note of the defendant's unique knowledge of the facts surrounding his or her prior criminal record and "the significance of the court's [Sandoval] determination" with respect to the defendant's ultimate decision whether to testify (79 NY2d, at 661-662). Based on these considerations, we concluded that "the potential for meaningful participation by the defendant" in this *265 context "is apparent" and that, accordingly, a defendant has a right to be present during the substantive portion of the Sandoval hearing (id., at 660-661). Dokes may thus be viewed as merely another point in a continuum of cases explaining and applying the statutory right to be present at "material" stages of the proceeding.

V.
We need not definitively resolve the question whether Dokes represents a "new" rule of law, as the dissent contends, or is instead a mere application of existing principles to a new set of facts. In either event, retroactive application of the rule is required because the Pepper analysis leads inevitably to that conclusion. The first prong of the Pepper test, which looks to the purpose of the new rule and its relationship to the fact-finding process, cuts in favor of retrospectivity. The purpose of Dokes  to enable the defendant to contribute his or her "peculiar knowledge" of the relevant facts  is directly related to enhancing the accuracy of the Sandoval determination. Further, the pretrial Sandoval proceeding implicates the fact-finding process at trial, in that the trial court's Sandoval ruling "is often the pivotal factor in the defendant's determination whether to testify" (People v Dokes, supra, at 662) and a sound Sandoval ruling can weed out impeachment evidence of low probative worth (see, People v Sandoval, 34 N.Y.2d 371, 376-378, supra).
The second Pepper factor, the degree of prior reliance on pre-Dokes law, also supports retroactivity here. Contrary to the People's contentions, there was no firmly established body of case law approving the defendant's exclusion from Sandoval hearings. As the People acknowledge, in the Fourth Department, where defendants Favor and Smith were tried, there were no pre-1991 reported Appellate Division decisions sanctioning such a procedure. A similar situation existed in the First Department, which first addressed the issue in December of 1990 (People v Lee, 168 AD2d 267) and then, in the three successive cases raising the issue, reached inconclusive results (compare, People v Rose, 175 AD2d 32, affd 80 N.Y.2d 802; with People v Jordan, 174 AD2d 490; and People v Cruz, 179 AD2d 529, revd 81 N.Y.2d 738, supra). The Second Department also demonstrated some uncertainty about the correct resolution of the issue (compare, People v Scott, 163 AD2d 341; and People v Jenkins, 157 AD2d 854; with People v Peterson, 151 AD2d 512; *266 People v Dokes, 173 AD2d 724, revd 79 N.Y.2d 656, supra; People v Floyd, 179 AD2d 770; People v Ray, 184 AD2d 596; People v Gebrosky, 181 AD2d 692, revd 80 N.Y.2d 995, supra). In fact, the only real consistency on the issue came from the Fourth Department, which held, in a series of 1991 decisions, that the defendant's exclusion from Sandoval hearings did not require reversal in the absence of preservation or a showing of prejudice (People v Wynn, 175 AD2d 659; People v Lomack, 174 AD2d 1037; People v Alexander, 174 AD2d 996, revd 80 N.Y.2d 801; People v Cole, 174 AD2d 970; People v Favor, 172 AD2d 1052, supra [revd herein]; People v Dunbar, 172 AD2d 1006). And, even these Fourth Department decisions, which rested primarily on preservation grounds, could hardly be regarded as ringing endorsements of the practice of excluding the accused from Sandoval hearings.
Moreover, even if it could be argued that the Appellate Divisions had been developing a consistent body of case law on the subject, reliance on such a short-term phenomenon cannot be justified, particularly in view of the fact that of the 14 cases which the People now cite, five (including this one) were reversed when they reached this Court of Appeals. Such reliance would have been especially unwarranted, since the decisions handed down by this Court during the same period of time left little room for doubt about the need to include the defendant in any proceeding in which his or her participation would potentially be meaningful (see, III., supra).
Finally, the third Pepper factor, the effect of the new rule on the administration of justice, does not furnish a sound basis for withholding application of Dokes to all cases currently pending on direct appeal. Contrary to the People's assertion, there is simply no indication in the parties' submissions that retroactive application of Dokes could lead to wholesale reversals. Unlike in People v Mitchell, where the disapproved practice was virtually universal (see, 80 NY2d, at 529, supra), the People have failed to demonstrate that the practice of excluding defendants from Sandoval hearings was widespread throughout the State before it was rejected in Dokes. Moreover, unlike in Mitchell, there are no special factors here, such as the need to hold reconstruction hearings (see, 80 NY2d, at 529, supra) that would have a serious deleterious effect on the administration of justice in this State.
In sum, there is no convincing reason in this instance to depart from the general principle that cases on direct appeal *267 are to be decided under the law at the time of the decision. Accordingly, our holding in Dokes is fully applicable to the two appeals before us and the only remaining question is whether that holding requires reversal under the facts and circumstances presented by each case.

VI.
People v Favor
As the record of his trial makes clear, defendant Favor was not present at the Sandoval hearing when the use of his prior criminal acts was discussed. This exclusion was a clear violation of the Dokes holding. The fact that the trial court recited the gist of its Sandoval decision in defendant's presence does not ameliorate the error, since this recitation did not furnish defendant with the opportunity for meaningful participation to which he was entitled (see, People v Alexander, supra). Moreover, contrary to the dissent's contention, there is no basis for holding defendant's presence to have been "superfluous" in this context, since the outcome of the proceeding from which he was excluded was not wholly favorable and the surrounding circumstances do not negate the possibility that defendant might have made a meaningful contribution to the colloquy (cf., People v Smith [decided herewith]). We note that, notwithstanding the dissent's vigorous arguments to the contrary, this conclusion is no more "speculative" here than it was in our unanimously decided rulings in People v Dokes (supra), People v Cruz (supra), People v Gebrosky (supra), People v Beasley (80 N.Y.2d 981, supra), People v Rose (supra) and People v Alexander (80 N.Y.2d 801, supra). Thus, reversal of defendant Favor's conviction is required, even in the absence of a timely objection (see, People v Dokes, supra, at 662).
Our holding in this case represents a rejection of the People's effort to inject a case-specific "prejudice" test into the Dokes inquiry. The suggestion that we should inquire into individualized prejudice is inconsistent with our rationale in Dokes, which stressed that prejudice is inherent when a defendant is deprived of the opportunity for meaningful participation at a "material" stage of trial (see, id., at 661-662). Likewise, we decline to adopt the People's further contention that the remedy in cases involving Dokes error should be a remittal for a new Sandoval hearing rather than an outright reversal of the judgment of conviction. Such a proceeding, *268 conducted in hindsight and on artificial terms, is not an adequate substitute for the authentic, give-and-take discussion that occurs when the Sandoval question is fresh.
People v Smith
The facts in defendant Smith's case necessitate a different result. The only portion of the proceeding from which this defendant was even arguably excluded was a preparatory bench conference at which the prior criminal acts the People wished to use for cross-examination were identified and, insofar as may be discerned from the record, the court made a preliminary determination excluding 10 of the 14 identified acts. Defendant was indisputably present for the remainder of the proceeding, in which the parties argued about the admissibility of the remaining four criminal acts and the court made its de novo determination about those acts.
In view of the wholly favorable outcome of the portion of the Sandoval proceeding from which defendant was excluded, it cannot reasonably be said that there was any potential for additional meaningful input by defendant. Thus, this is one of those exceptional situations in which the accused's presence would have been wholly "superfluous" (see, People v Dokes, supra, at 662).
Although we hold that Dokes does not require reversal in defendant Smith's case, we note that the better practice would be to have the accused present during every colloquy relating to the Sandoval question, since the outcome of such colloquies can rarely be predicted in advance. In view of the significant potential for meaningful participation by the defendant, there would seem to be little sound reason, short of an affirmative waiver, for excluding the defendant from any aspect, informal or formal, of the Sandoval proceeding.
We have considered defendant's remaining contentions concerning the effectiveness of his attorney's representation and find those contentions to be without merit.
Accordingly, in People v Favor, the order of the Appellate Division should be reversed and a new trial ordered; in People v Smith, the order of the Appellate Division should be affirmed.
BELLACOSA, J. (dissenting in People v Favor).
Insofar as the Court's combined opinion resolves the appeal in People v Favor by not applying the Dokes (79 N.Y.2d 656 [June 11, 1992]) superfluity exception and by giving the Dokes rule traditional retroactivity effect, I respectfully dissent and vote *269 to affirm the order of the Appellate Division upholding defendant's multiple convictions.
In the early morning hours of January 27, 1989, defendant seized a teenage girl, put a knife to her neck, ordered her to proceed down a driveway, and raped her. The victim described her attacker to the police, and after the perpetrator was arrested, she identified him in a lineup. Defendant was indicted for five crimes, including rapes against two different victims. Based on the identification of one of the victims and her testimony, defendant was convicted, after a jury trial on severed counts, of forcible rape in the first degree and kidnapping in the second degree. He did not testify. After his conviction, he pleaded guilty to the other rape, kidnapping and attempted robbery counts.
On the morning before the voir dire selection of the jury for trial, the trial court discussed the Sandoval issue in chambers with the prosecutor and defendant's counsel. Since it was an untranscribed in-chambers conference, the record is silent as to whether defendant was present, but it appears uncontested that he was absent. However, with defendant present later that day in the courtroom, the trial court then recited for the record the result of the morning chambers' conference:
"THE COURT: All right. Before we started selecting the jury this morning we had a Sandoval conference in chambers. And I was told the defendant had a conviction for attempted unauthorized, or excuse me attempted unlawful imprisonment in the second degree from 1986 to which was sentenced to probation. I indicated that based on the similarity of unlawful imprisonment to kidnapping in the second degree that I would not allow the people to ask about that conviction's underlying facts or the title of that conviction, but they could ask if he had ever been convicted of a misdemeanor. Are there any other issues you'd like to put on the record at this point?

"MR. JACOBS: Just that the district attorney informed me of no other bad acts which did not result in conviction. That was the only thing that I was aware of.
"MR. SCHAUSEIL: Right.
"THE COURT: Okay. Anything else before we have the openings tomorrow?" (Emphasis added.)
*270 That is the entire record on the Sandoval issue. Defense counsel made no objection to the overwhelmingly favorable defense ruling, nor did counsel or defendant, at the express invitation of the trial court, request review or reopening of the bare misdemeanor aspect or any other aspect. The Appellate Division affirmed the conviction (172 AD2d 1052), and upon leave by a Judge of this Court, the Court reverses the convictions.
The majority retroactively applies the Dokes absolute-presence-no-preservation rule and holds that the Sandoval procedure employed by the Trial Judge in 1989, three years before Dokes was decided, nevertheless automatically entitles defendant to a new trial. The sole item with respect to which the trial court would have allowed cross-examination of defendant, had he chosen to testify, was the barest official fact and matter of record  his prior conviction for a misdemeanor. The ruling interdicted the People from identifying the nature, title or underlying facts of that prior misdemeanor. There is no cognizable or meaningful way defendant's presence at the inchambers discussion could have materially contributed to the trial court's Sandoval ruling. To suggest otherwise on this record is speculative. Thus, the pro forma "absence" of defendant, as is customary (though no longer in Sandoval matters), from the Trial Judge's in-chambers conference with the lawyers  for security and other logistical reasons  was not an "exclusion." Also, it was truly "superfluous" on the sparse record, within the Dokes exception and within the comparable analysis applied to affirm the companion case here, People v Smith (decided today). I do not believe the labored distinctions between Favor and Smith on superfluousness hold up on close analysis.
In addition to my superfluousness analysis concerns, I believe the distinctions between Favor and People v Mitchell (80 N.Y.2d 519 [Dec. 17, 1992]) are also unavailing. I discern no principled basis for rejecting in Favor the Mitchell (supra) prospectivity approach in its handling of the People v Antommarchi (80 N.Y.2d 247 [Oct. 27, 1992]) presence rule. Prospectivity is before this Court for the first time in Favor, and is cogently presented for critical resolution based on recent precedential authority of this Court  Mitchell. By acknowledging the significantly expanded procedural and substantive features of Dokes and its sequelae and parallel procedural categories, this Court could quite justifiably utilize the analytical channel provided by People v Pepper (53 N.Y.2d 213, cert denied 454 US 967) *271 to apply the Dokes formulation only prospectively (see, Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 170 [Margaret E. Hall ed 1947]). It is no answer, I respectfully submit, that this problem, unlike the State-wide Antommarchi (80 N.Y.2d 247, supra) impact, is claimed to be confined to Fourth Department practice and cases. The fact is otherwise, and the number of automatic reversals is very large and significant. The result unnecessarily unsettles hundreds of tried cases across the State. Thus, to me, Mitchell is to Antommarchi as Favor ought to be to Dokes.
I am mindful of the circumstance here that, unlike the coincidental back-to-back appeals and sessions of Court in Antommarchi and Mitchell, the Court is confronted in People v Favor with a relatively short period of time during which several appeals (see, e.g., People v Cruz, 81 N.Y.2d 738; People v Gebrosky, 80 N.Y.2d 995; People v Alexander 80 N.Y.2d 801) were decided by this Court shortly after Dokes by applying its new rule. That rapid sequence feature is a distinction without legal significance and should not foreclose the Pepper prospectivity approach, especially since the Court correspondingly recognizes in this case that the retroactivity versus prospectivity issue was not argued in any of those intervening cases.
The Court has principled, analytical and precedential bases, in my view, to treat the intervening cases as serendipitous interludes and coincidences, which do not preclude application of the Antommarchi-Mitchell matrix to the parallel prospectivity problem presented here. The practical consequences in countless cases are equally devastating, and the rules in Dokes (79 N.Y.2d 656, supra [defendant's right to be present at a Sandoval hearing]) and Antommarchi (80 N.Y.2d 247, supra [defendant's right to be present at sidebar discussions]) certainly have sufficient related characteristics to warrant like prospective treatment.
Moreover, I am unpersuaded by that portion of Judge Titone's opinion that concludes that this Court did not break "any new legal ground" in Dokes. Interestingly, he refers to mere "foreshadowings" in prior law for the characterization that Dokes is merely a "point in a continuum" (majority opn, at 264, 265), despite the fact that prior to Dokes this Court had not previously addressed the right to be present at Sandoval hearings, to say nothing of its newly promulgated forgiveness of the usual preservation requirements.
*272 The proposition that Dokes broke new ground and broadened the presence-of-defendant procedural regimes is, in my view, unassailable. Simply put, the new rule insures automatic new trials in countless cases (1) without the necessity of any of this Court's usually strict preservation requirements, a general protocol reasonably relied upon by the Bench and Bar (no objection is required and even tactical silence does not bar the ultimate relief); (2) without any examination or showing of prejudice or harmless error analysis (the superfluity exception mentioned in the new Dokes rule is in this case effectively rendered de minimis and different in kind, not just grade, from the genre of prejudice); and (3) with full retroactivity.
This Court's expectation of clairvoyance from Trial Judges in anticipating how this Court eventually ruled on this issue, years before we did so, is not well founded. No Trial Judge could have reasonably foreseen these ratchetings. Yet, it is Trial Judges who ultimately bear the responsibility for these new trials that are being automatically mandated. They suffer these rebuffs to their handling of numerous trials because they were not prescient enough, despite otherwise fastidious precautions and procedures employed in the light of the "presence-preservation" law as it was before 1992. Protection of the record and the defendants' rights, too, as in this 1989 case, with an almost entirely favorable defense ruling on the Sandoval issue itself, is held insufficient.
It cannot be overlooked that this case presents yet another category of cases in which virtual per se results are compelled, and now fully retroactively. The relatively recent phenomenon of this Court's expanding per se jurisprudence appears to contradict the Holmesean-Cardozean notion of interstitial, incremental development in the common-law decisional process (Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 134, 150 [Margaret E. Hall ed 1947]). Facets of individual cases intended to achieve the individually weighed justice desideratum are lost when automatic applications and results are commanded without regard to a broader-based examination of all relevant considerations and policies in each case.
In sum, my vote to affirm in Favor is driven by the Court's unnecessarily restrictive construction of the Dokes superfluous presence exception for the first time on the record of the trial court's ruling in this case. This construction and application is theoretically, functionally, practically and effectively indistinguishable *273 from the analysis applied in People v Smith (decided today), yet with diametrically opposite results. Here, the Court uses the pure per se sweep. The starkness of this realization has led me to question the correctness of my own vote in Dokes. However, I cannot take that back and must acknowledge its stare decisis impact. That does not mean I cannot question the application of the deminimized superfluousness exception or look for a legitimate jurisprudential palliative, as the entire Court did in People v Mitchell (80 N.Y.2d 519, supra), after recognizing and reciting the devastating consequences that per se nonpreservation presence rule would have if it were given retroactive operative effect. If this Court could make the sidebar presence rule applicable only to trials after the Antommarchi date, I cannot fathom why it cannot do the same thing here with this Dokes' Sandoval presence rule, which inflicts comparably devastating consequences. The numerous automatic reversals recited by the majority itself, occurring in this Court alone, are testament to the widespread debacle and phenomenon in all the lower courts (see also, amicus curiae brief of NY State Dist Attorneys Assn).
My vote is to affirm the order of the Appellate Division upholding the conviction.
In People v Favor: Order reversed and a new trial ordered.
In People v Smith: Order affirmed.
NOTES
[1] See, People v Sandoval (34 N.Y.2d 371).
[2] Because of the important "underlying considerations of finality," the Supreme Court has not been as generous in applying new rules of constitutional law to collateral proceedings such as those seeking habeas corpus relief (Teague v Lane, supra, at 305-316 [O'Connor, J.]; see, Graham v Collins, supra). Similarly, for purposes of retroactivity analysis, our Court has drawn a sharp distinction between cases on direct appeal and cases in which "[t]he normal appellate process [has come] to an end" (see, People v Pepper, supra, at 222).
[3] For example, the Supreme Court has indicated that a legal rule will be considered "new" if it "was not `dictated by precedent'" (Graham v Collins, 506 US, at ___, 113 S Ct, at 897, 122 L Ed 2d, at 269, supra, quoting Teague v Lane, supra, at 301 [O'Connor, J.] [emphasis in original]). Manifestly, this standard, which was devised to address the applicability of recent judicial decisions to collateral habeas corpus proceedings, would dramatically expand the class of cases in which retroactivity is in issue, since few decisions made by an appellate court such as ours are truly "dictated" or compelled by precedent.